[Civ. Nos. 16861, 16874. First Dist., Div. One. Jan. 13, 1956.]

DAVID FYNE et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and JASPER J. ROBINSON, Respondents.

(Two Cases)

Edward S. Sims for Petitioners.

Everett A. Corten, Daniel C. Murphy and Leonard, Hanna & Brophy for Respondents.

WOOD (Fred B.), J.—The employers have petitioned for review of a decision of the Industrial Accident Commission in which the commission found that one Jasper J. Robinson while employed as a carpenter by "David Fyne & Ruth Papkin, a co-partnership, doing business as Two-Minute Auto Car Wash" at San Francisco, California, on January 7, 1954, sustained an injury arising out of and occurring in

the course of said employment, and that at the time of the injury the employers were uninsured for workmen's compensation benefits but were not wilfully uninsured; awarded temporary disability indemnity of $35 a week beginning January 8 and ending March 21, 1954, also reasonable medical expenses incurred by the employee and an attorney's fee of $150 against "David Fyne and Ruth Papkin, a copartnership, doing business as Two-Minute Auto Car Wash"; and dismissed Industrial Indemnity Company, real party in interest herein.[1]

The employee was injured while working as a carpenter in the repair of fire damage which had occurred at an apartment house at 15th and Mission Streets, San Francisco.[2]

The sole issue presented is whether or not the employers were insured for workmen's compensation benefits in respect to the operation, occupation and employee here involved. If so, it was error to dismiss Industrial Indemnity Company and not the employers; if not so insured, no error was committed and the decision should be affirmed.

There was in effect at the time of the injury a certain workmen's compensation and employers' liability policy issued by Industrial Indemnity Company for the period November 18, 1953, to November 18, 1954.

The first page of this policy contains seven items of "Declarations." Item I designates the employer as "David

---

[1] In No. 16861 the employers petitioned for review of the commission's decision of June 29, 1955, rendered after reconsideration at the instance of the employers and confirming the findings and award originally made.

On July 12, 1955, at the request of the employers the commission set aside the decision of June 29th for oral hearing before Panel One of the commission.

On August 1, 1955, the commission vacated its order of July 12th and ordered affirmed and adopted its decision of June 29, 1955.

In No. 16874 the employers petitioned for review of the commission's order of August 1st.

[2] There is in evidence a partnership agreement which designates the partners as David Fyne and Ruth Papkin and lists the partnership properties as follows: (a) the business known as Two-Minute Automatic Car Wash, 590 20th Street, Oakland, California; (b) the business known as Two-Minute Automatic Car Wash, 79 N. Market Street, San Jose. California; (c) real property at 1918 Mission Street, San Francisco; (d) real property at 3543-3547 Nineteenth Street, San Francisco; (e) real property at 63-67 Albion Street, San Francisco; (f) the right, title and interest of David Fyne in the business known as Fine Rubber Co., 2696 Bayshore Boulevard, South San Francisco, California.

Although this partnership agreement was not signed until January 1, 1954, the parties testified that the partnership existed for some time prior thereto.

Fyne & Ruth Papkin, a copartnership, DBA Two-Minute Auto Car Wash, 590-20th Street, Oakland, California."[3]

Following these declarations, under the head of "Insuring Agreements," the policy states that the company "agrees with the Employer in respect to injury sustained by employees during the policy period, including death at any time resulting therefrom, as follows: . . . I. . . . To pay promptly benefits as required by the Workmen's Compensation Laws of the State of California to any person entitled thereto. . . . [II — Employers' Liability coverage — III — Longshoremen's compensation coverage—IV— extraterritorial liability coverage] . . . V. . . . To defend in the name and on behalf of the Employer, claims or suits against the Employer for compensation or damages because of injuries insured against hereunder . . ."

Then follow four paragraphs of "exclusions," such as: Serious and wilful misconduct not insured; not applicable to liability of employer as member of any partnership not named in Item I of the declarations; executive officers, members of firm, and relatives not insured unless specifically included in Item V of declarations; does not cover additional compensation for injuries to illegally employed minors under 16; if employer is a partnership, individual operations are not insured.

Next come 13 paragraphs of "conditions, the first of which, designated "A," provides for payment of "the premium earned under this policy," which shall be computed "for all operations or exposures (whether or not specified in the declarations) with respect to which insurance is afforded under any one or more of the Insuring Agreements. Remuneration upon which premium is based is the entire remuneration earned during the policy period by all employees covered. . . . At the end of each premium adjustment period [in this case annually] and upon termination of this policy, the

---

[3]Item II designates the policy period. Item III reads: "Principal Locations: as above."

Item IV is headed "Classification of Principal Operations," under which is typed "Automobile Laundry, Rated as: Automotive or Automobile Truck Service Stations . . . [including several related functions] . . . ," designating $1.37 per $100 of remuneration as the rate for the classifications mentioned, followed by the printed statement: "*Other operations*—Proper classifications and rates to be determined in accordance with the manual in use by the company."

Item VI declares the minimum premium to be $46 and the advance premium $215. Item VII declares that the payroll reporting and premium adjustment period is "annual."

Employer shall report to the Company the remuneration or other data upon which premium is based and the earned premium shall be computed and paid to the Company. If, at termination of this policy, the earned premium exceeds the premium paid, the Employer shall pay the excess to the Company; if less, the Company shall return the unearned portion except that the Company shall retain the Minimum Premium . . ."

The employers, the insurance company and the commission concur in the view that the "classifications" mentioned in Item IV of the declarations were listed for premium rating purposes and do not of themselves restrict the scope of the coverage.

The company and the commission contend that the designation and the principal location of the employer as stated in the declarations ("David Fyne & Ruth Papkin, a co-partnership, DBA Two-Minute Auto Car Wash, 590 - 20th Street, Oakland, California.") are restrictive both as to type of operations and place of work. Without discussing the provisions of Insuring Agreement I or those of Condition A, they seem to assume that the provisions of Items I and III of the declarations clearly impose limits upon the scope of the insurance coverage or at least produce an ambiguity which justifies resort to extrinsic evidence to ascertain the intent of the parties. Their discussion is devoted principally to the extrinsic evidence. The employers claim that Items I and III of the declarations are not thus restrictive, particularly in view of the broad sweep of other provisions of the policy, especially those of Insurance Agreement I and Condition A. We think the employers have the better of the argument.

Resort to extrinsic evidence cannot, of course, be had unless there is an ambiguity. The parol evidence rule, a rule of substantive law, imposes that requirement. Here the parties have emphasized the importance of that requirement by Condition M of their contract in which they declare: "This policy, including all endorsements or riders hereon, constitutes the entire contract of insurance. No condition, provision, agreement, or understanding not set forth in the policy or in such endorsement or rider shall affect such contract or any rights, duties or privileges arising therefrom."

As said in *Laventhal* v. *Fidelity & Cas. Co. of N. Y.*, 9 Cal.App. 275, 276 [98 P. 1075], "The policy is but a con-

tract, and, like all other contracts, it must be construed from the language used; when the terms are plain and unambiguous, it is the duty of courts to hold the parties to such contract."

A reading of the contract does not indicate an ambiguity. Items I and III of the declarations name the employer and designate the employer's principal location. Item IV lists the employer's principal operations. In paragraph I of the insuring agreements the insurer "Agrees with the Employer in respect to injuries sustained by employees during the Policy Period, . . . To pay promptly benefits as required by the Workmen's Compensation Laws of the State of California to any person entitled thereto." Paragraph A of conditions states that the premium shall be based upon remuneration "for all operations or exposures (whether or not specified in the declarations) with respect to which insurance is afforded under any one or more of the Insuring Agreements" including of course Paragraph I of the insuring agreements. The expression "whether or not specified in the Declarations" literally refers to each and all of the 7 paragraphs of declarations (not merely to paragraph IV which contains the "classification of principal operations") and thus states that the operations assertedly specified by the use of the expression "DBA Two-Minute Auto Car Wash" and by the designation of the employer's principal location (Items I and III) do not restrict or limit the all-inclusive scope of "all operations or exposures" of "any" employee of this employer who may become "entitled" to workmen's compensation benefits under the laws of California. In short, a reading of this insurance contract seems to compel the conclusion that it clearly, certainly and without ambiguity affords workmen's compensation insurance coverage for each and every employee of this employer without regard to the nature of the work or the place of work.

This interpretation finds support also in the provisions of sections 11657-11660 of the Insurance Code as implemented by sections 2250-2268 of title 10 of the Administrative Code. Section 11657 provides that "Subject to the provisions of sections 11658, 11659 and 11660, limited workmen's compensation policies may be issued insuring either the whole or any part of the liability of any employer for compensation. Subject to those provisions, any such policy *may restrict or limit such insurance in any manner whatsoever.*" (Emphasis

added.)[4] This language clearly comprehends restrictions or limitations as to operations, exposures, persons, occupations, and locations as well as limitation of the amount or kind of compensation payable to a person rightfully claiming under the policy. Policies must be approved by the insurance commissioner as to substance and form (§ 11658). An approved form of policy, "limited pursuant to section 11657, shall not be otherwise limited except by endorsement thereon in accordance with a form prescribed by the commissioner or in accordance with rules adopted by the commissioner." (§ 11659.) Failure to observe the requirements of sections 11658 and 11659 renders "any such policy, issued under section 11657 and not complying therewith, unlimited." (§ 11660.) As reported in 20 I.A.C. 118, *New Amsterdam Casualty Co.* v. *Industrial Acc. Com.*, the District Court of Appeal (1st Dist., Div. 2) by denying a petition for review (without opinion) in effect held that a certain compensation policy was not "limited" *as to location*, "there being no stipulations or endorsements in form prescribed by the Insurance Commissioner or in accordance with his rules and regulations. . . ." (P. 118 of 20 I.A.C.)

The insurance commissioner's regulations and various approved forms appear in the sections of the Administrative Code above cited. They are designed to govern the "Limitation or restriction of coverage under workmen's compensation insurance policies . . ." (10 Cal. Admin. Code, § 2252.) Among the approved forms of endorsements set forth in section 2268 of title 10 is No. 10, a form for the exclusion of "Employees and/or Operations and/or Locations" with spaces for the insertion of "optional fillers." Section 2260 sets forth 17

[4]Section 11657 is a continuation without substantial change (see Ins. Code, § 2) of the following portion of subdivision (a) of section 31 of the workmen's compensation, insurance and safety act of 1917, as amended in 1929: "Policies of compensation insurance may be issued insuring either the whole or any part of the liability of any employer for compensation, and any such policy may restrict or limit such insurance in respect to locations, employees, operations or risks, or restrict or limit the amount or kind of compensation to be furnished or paid or limit or restrict such insurance in any other manner whatsoever. . . ." (Stats. 1929, ch. 679, p. 1167 at 1169.)

The 1929 amendment obviously enlarged the concept of "limited" compensation insurance far beyond the scope thereof as formerly expressed in section 31 of the 1917 act. (See *Zurich Gen. Acc. etc. Ins. Co.* v. *Stadelman*, 208 Cal. 151 [280 P. 687], and *Ocean A. & G. Corp.* v. *Industrial Acc. Com.*, 208 Cal. 157 [280 P. 690], for interpretation of subdivision (a) of section 31 as it existed prior to the 1929 amendment.)

474

types or forms of optional fillers[5] and declares that form No. 10 may be completed by the insertion of one of these "options *and none other*."

■ When, despite these emphatic and meticulously detailed requirements governing the "limitation or restriction of coverage," an insurer writes a policy with the all-inclusive coverage of the policy here involved and attaches no endorsements or riders of any kind to it, the conclusion is irresistible that the insurer intended full coverage without limitation or restriction of any kind whatsoever.

■ A photostatic copy of a printed circular bearing the legend "Published For Producers By Industrial Indemnity Company" is annexed to the petition herein as Exhibit D. The petition, which is verified, alleges and the answer of the company does not deny[6] that the form of policy here involved was put into effect on November 21, 1949, and was announced by Industrial Indemnity Company in said circular. That does not make the circular or the circumstances of its issuance a part of the record upon this review, for such facts were not put in evidence at the hearing before the respondent com-

---

[5]Among these optional fillers are the following:

". . . (c) 'Any employee engaged in any work other than directly in connection with the operations specifically described in the policy schedule or amendment of such schedule by endorsement.' (d) 'Any employees engaged in any work not directly connected with operations conducted at . . . . . . . . . . . . . . .' (Insert here a careful description of the location to be covered.) (e) 'Any employees engaged in any work directly connected with operations conducted at . . . . . . . . . . . . . .' (Insert here a careful description of the location to be excluded.) (f) 'Any employees engaged in the following operations or occupations . . . . . . . . . . .' (Insert here a careful description of the operations or occupations to be excluded and the manual classification and code number applicable to such operations) (g) 'Any employees engaged in the following operations: . . . . . . . . . . . . . . .' (Insert here careful description of operations and manual classification and code number applicable thereto) 'at or from . . . . . . . . . . . . . . . . ' (Insert here careful description of location to be excluded.) . . . (i) 'Any employee engaged in any work conducted under any name other than the firm or trade name of . . . . . . . . . . . . . . .' (Insert here the name under which the insured covered by the policy is doing business.) . . . (*l*) 'Any employees other than those engaged in the following operations . . . . . . . . . . . . .' (Insert here careful description of operations and manual classification and code number applicable thereto) 'at or from . . . . . . . . . . . . . . . . . . .' . . ."

[6]The company's answer to the petition, verified by one of its attorneys, says in this regard: "As to whether the Exhibit is genuine, was issued, pertains to the policy form here or to some other form, *counsel* for respondent has no knowledge." (Emphasis added.) This, obviously, is not a denial of the accuracy of the copy or of the authenticity of the original.

Moreover, where as here the facts verified by the petition are presumptively known to the defendant an answer on information and belief

mission, those facts allegedly having come to petitioner's notice subsequent to that hearing and just prior to the filing of the petition.

However, since the circular is available as an expression of opinion and is couched in such clear and cogent terms, we are persuaded to quote the following portions of it, not as a basis for estoppel against raising the issues which the company has presented nor as extrinsic evidence of the intent of the parties but as a statement of legal conclusions based upon the very words used in the contract: "Industrial Indemnity Company's new Workmen's Compensation policy contract, designed specifically for full coverage for California employers, will be available for your use beginning November 21st. . . .

"Following are highlights of the most important coverage extensions:

"1—UNDISCLOSED OPERATIONS

"Under the 'standard' form no coverage exists for the operations of an employer when such operations are not described in the policy and not incidental to the operations described. This is true regardless of where the operations were performed.

"*Such undisclosed operations are fully covered under our new policy.*

"2—DOMESTIC EMPLOYEES

"(a) Under the 'standard' form, an individual employer whose policy describes a business operation has no coverage for a domestic employee who works more than 52 hours a week and thus comes under the Compensation Act.

"*Such domestics are automatically covered under our new policy.*

"(b) An employer with a 'standard' form policy on his business operations has no coverage on a domestic employee who works less than 52 hours a week; or on employees otherwise exempt from the Compensation Act.

---

or for lack of information and belief would raise no issue. It would amount to an admission of the truth of the allegation. (See cases collected in 21 Cal.Jur. 149-150, Pleading, §§ 99 and 100, and supplements thereto.)

When, in such a case, defendant is a corporation, it cannot place its denials upon the ground of want of information and belief even though the person verifying the answer was himself without any information or belief on the subject. (*Sloane* v. *Southern Cal. R. Co.*, 111 Cal. 668. 685-686 [44 P. 320. 32 L.R.A. 193].)

*"The Employers' Liability section of our new policy protects the employer against damage suits from such employees.*

"3—Extra-territorial or 'All State' Operations

"The 'standard' policy follows employment for California-hired employees but does not cover the employer in the event an employee injured outside of California elects to recover under the Compensation laws of the state in which he was injured.

*"The new Industrial Indemnity Company policy extends coverage to the employer in such cases.*

"4—Longshore Exposure

"The 'standard' policy does not include insurance under the Federal Longshoremen and Harbor Workers' Act. There is a fine dividing line as to when any employer may be subject to that Act.

*"Our new policy removes any doubt as to protection by automatically providing specific coverage for the employer.*

"5—Trade Names

"No coverage has existed under the 'standard' form policy for an employer doing business under a trade name when, under a different trade name, he engages

"(a) in the same operation elsewhere, or,

"(b) in a different business operation

*"Coverage in both of the above cases will continue to be afforded under our new policy.*

"6—Other Features of the new policy which will interest producers and their clients are:

"(a) It places Employers' Liability coverage on an 'occurrence' rather than an 'accident' basis.

"(b) It does not exclude illegal employment under Employers' Liability.

"(c) It is probably the only short-form Compensation policy issued by any carrier which automatically covers related Longshore exposure, includes 'Liability Over' provisions, specifically includes U. S. territories and possessions and provides 'All States' or extraterritorial coverage."

The apparent newness of this form of policy perhaps explains the lack of reported judicial decisions interpreting it or similar policies. The cases upon which the company and the commission rely involve policies markedly different from this one because of patently narrow coverage or by reason of restrictive clauses embodied in the policy or annexed to it by

endorsement. For example, in *National Auto. Ins. Co.* v. *Industrial Acc. Com.*, 21 Cal.App.2d 156 [68 P.2d 748], the court annulled an award against the petitioning insurance carrier because the employee was injured while engaged in an operation not covered by the policy. It appears from the decision that this operation "To have been properly covered, . . . would have required an additional classification of operation. . . ." (P. 158.) Perusal of the petition for writ of review in that case discloses the fact that a certain endorsement on the policy expressly excluded from coverage injuries "sustained by any employees engaged in any operations other than those operations specifically rated and described as covered hereunder in the Classification of Operations schedule herein" and expressly limited coverage to "such operations of this Employer which are performed upon the following described premises or directly in connection with such operations." (Pet. p. 5.)

Somewhat similar restrictions and limitations in varying forms precluded coverage in *Western Indem. Co.* v. *Industrial Acc. Com.*, 43 Cal.App. 487, 488 [185 P. 306]; *Pacific Indem. Co.* v. *Industrial Acc. Com.*, 29 Cal.App.2d 414, 415 [84 P.2d 793]; and *Paulson* v. *Industrial Acc. Com.*, 44 Cal.App.2d 511, 513 [112 P.2d 710].

In *National Auto. Ins. Co.* v. *Industrial Acc. Com.*, 3 Cal. App.2d 410 [39 P.2d 477], it was "conceded that the insurance policy covered only the hardware business" (p. 411) and there was no evidence upon which to predicate a finding that the injured employee was doing work in connection with the hardware business. *Ogburn* v. *Travelers Ins. Co.*, 207 Cal. 50 [276 P. 1004], involved a travel insurance policy that covered injuries " 'sustained while riding as a passenger on any public conveyance provided by a common carrier and such conveyance is being propelled on land or water by mechanical power . . .' " (P. 52.) Obviously, that did not cover injuries sustained when the insured fell down a hotel elevator shaft. *Brown* v. *Travelers Ins. Co.*, 31 Cal.App.2d 122 [87 P.2d 377], involved a public liability policy which specifically excluded injuries which occurred when the automobile was being driven " '. . . by any person in violation of any state . . . law as to age applicable to such person.' " (P. 123.) This clearly excluded coverage while the car was being driven by the insured's 14-year-old son without a driver's license.

■ The company and the commission suggest that petitioners are bound by the testimony of one of their witnesses, Peter L. Davey, secretary of the California Inspection Rating Bureau, testimony to the effect that the coverage of this policy was limited to operations bearing some relation to the trade name used by the insured, "Two-Minute Auto Car Wash." We do not see that petitioners were bound by such testimony. The witness was neither a member nor an agent of this partnership and, therefore, could not make an admission or stipulation in their behalf, and the subject matter of the testimony was essentially in the nature of legal conclusions which it is the function of the commission and of the reviewing court to draw from their reading of this contract of insurance.

In Number 16861, the award is annulled with directions to the respondent commission to revise the findings of fact in accordance with the views herein expressed, to make the awards against Industrial Indemnity Company in lieu of the employers, and to dismiss and discharge the employers from the proceeding. In Number 16874, the petition being predicated upon a void order of the commission (see *Crowe Glass Co.* v. *Industrial Acc. Com.*, 84 Cal.App. 287 [258 P. 130], and *Goodrich* v. *Industrial Acc. Com.*, 22 Cal.2d 604, 611 [140 P.2d 405]), the proceeding is dismissed.

Peters, P. J., and Bray, J., concurred.