EUGENE CHANEY, JR. *v.* HOME INDEMNITY COMPANY ET AL.

[No. 507, September Term, 1971.]

*Decided March 8, 1972.*

The cause was argued before ANDERSON, ORTH and GILBERT, JJ.

*Allen A. Sperling* for appellant.

*R. Roger Drechsler,* with whom were *Lord, Whip, Coughlan & Green* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Home Indemnity Company (Home) issued a Workmen's Compensation insurance policy to Eugene Chaney, Jr. (Chaney), trading as the Flamingo Restaurant, for the period commencing October 12, 1967 to October 12, 1968. The policy was subsequently renewed on October 10, 1968,[1] so as to provide coverage to October 10, 1969, but it was cancelled on January 13, 1969 for reasons hereinafter apparent.

Chaney closed the Flamingo Restaurant in July, 1968 and commenced operation of a different business known as "Carbo-Jet", a soda dispensing machine sales and installation concern catering to the restaurants and bars in the local area. It is conceded by Chaney that he did not notify Home of the change in the nature of his business from Flamingo Restaurant to Carbo-Jet because he did not think it necessary to do so.

George A. Russell had been employed to work as a helper in the installation of the soda dispensing units for a period of about six weeks prior to an accidental injury that happened to him on November 7, 1968. Home

---

1. No explanation is furnished as to the reason for the overlap of two days, but the same is of no consequence to this case.

controverted the claim on the ground that its coverage did not include Chaney's operation as Carbo-Jet, but only afforded protection to the employees of Chaney trading as the Flamingo Restaurant. The Workmen's Compensation Commission decided adversely to Home and an appeal was taken to the Superior Court of Baltimore City. Subsequently the case was removed to the Circuit Court for Charles County and heard by Judge James C. Mitchell, sitting non-jury. Judge Mitchell reversed the order of the Workmen's Compensation Commission and held that the insurance policy did not cover Chaney's employees in his Carbo-Jet enterprise. Chaney filed, in timely fashion, an appeal to this Court where we are confronted with the question:

> "When an employer, insured under a workmen's compensation insurance policy, changes the nature of his business to one different from that in which he was engaged when the policy issued, or adds a new and different line of business to his existing business, without expressly notifying his insurance carrier, is his employee, engaged in such new or additional line of business, covered under his workmen's compensation policy?"

The testimony established that George A. Russell had been hired by William Alcorn, a supervisor-salesman for Carbo-Jet, to assist in the installation of the soda dispensing devices. The accidental injury to Russell is not an issue in this appeal, and no more need be said than that he was injured in the course of, and arising out of, his employment with Carbo-Jet.

Chaney had at least four businesses, i.e., Waldorf Restaurant, Flamingo Restaurant, Chaney Enterprises and Carbo-Jet. The Carbo-Jet business was conducted from the rear of the Flamingo Restaurant. Russell testified that he had never worked for the Flamingo Restaurant in any capacity whatsoever. Chaney sought to justify his failure to notify Home of the change of business on the

grounds that he did not think it was necessary to do so; that he was the sole proprietor in each of his businesses and that he filed a single tax return with both the State and Federal Governments, listing all of his employees of Flamingo and Carbo-Jet under the name "Eugene Chaney, Jr., t/a Flamingo Restaurant." No separate employer identification number was ever sought by Chaney so as to distinguish Carbo-Jet from Flamingo, and the W-2 forms were issued under the Chaney name trading as Flamingo. The restaurant reopened in the fall of 1968 and both it and Carbo-Jet were conducted from the same premises. Basically the work of Carbo-Jet was performed away from the Flamingo. Chaney testified that he maintained a separate bank account, billing, books and records for Carbo-Jet. In fact, three checks offered into evidence, payable to the claimant, George A. Russell, bore the name "Carbo-Jet" and nothing is represented thereon to indicate any connection whatsoever with Flamingo Restaurant.[2] Mr. Russell testified that he considered Chaney to be his boss and that he reported to work in the rear of the restaurant building.

Herbert S. Kane, an auditor for Home, audited the payroll records of Flamingo on two different occasions. The first time was on November 26, 1968, and that audit was purely routine, to determine what, if any, additional premium was due and owing by Chaney to Home.

The auditor testified that during the second audit on February 12, 1969, he saw the "unemployment reports, Maryland unemployment reports and the check book and * * * a Miss Pruitt told me that I would have to take out Carbo-Jet, which I knew nothing about. She explained to me what Carbo-Jet was. I asked her if there was another policy for Carbo-Jet and she said she didn't know, that she assumed it had been taken care of. So I

---

2. The checks were signed with a signature that appears to be "Albert Minor" although there is no testimony as to who Albert Minor is and what his connection was with Carbo-Jet. However, there is a W-2 form submitted as an exhibit by the employer which shows that one Albert Minor, Jr. was paid wages by Chaney, trading as Flamingo Restaurant.

eliminated Carbo-Jet from the payroll that was given to me."

Miss Pruitt marked the names of the three Carbo-Jet employees with an "X" on the Maryland Unemployment Report. The auditor recanted part of his previous testimony on cross-examination, when his memory was refreshed, and stated he did know about Carbo-Jet at the time of the second audit.

Home also offered testimony from an underwriter that the classification code number for employees of a restaurant, as established by the Workmen's Compensation Commission, was No. 9079, with an annual premium of $1.34 [3] per one hundred dollars of payroll. He likened the installation of soda dispensers to plumbing which has a classification number of 5183, with an entirely different rate.

At the Commission, the trial court, and here, Chaney argues that the policy of insurance was issued to him and that, therefore, coverage is afforded to his employees in whatever business he undertakes. Judge Mitchell stated:

"* * * as a matter of justice, * * * when a man walks into an insurance agency and orders a policy for a restaurant, which he is conducting, for himself, trading as that restaurant, * * * he is not insuring Engene Chaney generally, but Eugene Chaney in connection with that particular restaurant business."

* * *

"He started another business, obviously still owned by him but under an entirely different individual name, except different books, different bank accounts, different type of operation entirely. Eugene Chaney, Jr. trading as Carbo-Jet.

"It seems perfectly clear to us that he was not

3. The record reveals two different premiums. The original policy provided an annual premium of $1.41 per $100.00 payroll. Testimony from an underwriter was to the same effect; however, the renewal policy shows a premium of $1.34 per $100.00 of annual payroll.

covered in that operation and that the Commission committed error in its findings on the fact and the law applicable to this case."

It is patent that the sole question presented by this appeal is one of coverage *vel non* under the insurance policy.

The appellant argues that inasmuch as the policy did not restrict coverage to the restaurant business that he was therefore afforded coverage in any business undertaking. He relies upon the language in the exclusions clause of the policy which states:

"This policy does not apply:

(a) to operations conducted at or from any workplace not described in Item 1 or 4 of the declarations if the insured has, under the workmen's compensation law, other insurance for such operations or is a qualified self-insurer therefor;"

Item 1 names the appellant "T/A The Flamingo Restaurant, Rt. 301, two miles north of Waldorf, Maryland." Item 4 is entitled "Classification of Operations" and goes on to describe the classification of the business as "Restaurants—including N.P.D." [4]

Appellant contends that the Carbo-Jet business was operated from the same address as Flamingo and, therefore, is not within the exception, and, secondly, that he had no other insurance.

We disagree with appellant's interpretation of the policy. We do not interpret the word "restaurant", which is defined in the American Heritage Dictionary of the English Language as "a place where meals are served to the public," as being synonymous with a soda dispensing sales and installation business, nor are we persuaded by the fact that Carbo-Jet did not have insurance coverage. The policy provides that in the event a

---

4. N.P.D. means no payroll division.

change is to be made that such a change can only be effected "by endorsement issued to form a part of this policy, signed by an authorized representative of the company." No endorsement was ever made, and the fact that the appellant believed none was necessary does not relieve him of his responsibility to notify the insurer of the change in his business undertaking.

We are referred by appellant to the case of *U. S. Fidelity & Guaranty Co. v. Taylor*, 132 Md. 511, 104 A. 171 (1918), as support for his position that the "insurance taken is as broad as the liability which is required to be insured."

Our perusal of that case convinces us that the appellant's reliance thereon is misplaced. There, the appellee had two businesses, one insured and one not insured. One Briscoe was killed when engaged in road construction in Saint Mary's, Maryland. Previously, an insurance agent had contacted Taylor, the employer, and recommended Workmen's Compensation coverage for the road construction business. Taylor, however, declined the coverage on the mistaken belief that employees in the road construction business were not within the ambit of the Workmen's Compensation Law. The State Industrial Accident Commission passed an order awarding compensation to Briscoe's widow. Taylor and his insurer appealed to the Superior Court of Baltimore City where in a non-jury trial the finding of the Commission was sustained. No appeal was taken from the judgment entered on the verdict. Instead, the insurer sued Taylor in Calvert County in an action at law on the theory of suretyship. The trial court found for Taylor and the Court of Appeals reversed. It was held that the insurance company could maintain its action against Taylor, and Chief Judge Bond stated:

> "Without meaning in any way to criticize,
> or to express an opinion as to the correctness
> of the award of the Commission, as that is not
> before us for review, we can not hesitate to

> hold that as between the appellant and the appellee the policy did not include Briscoe, and the appellant is simply in the position of a surety for the compensation allowed by the Commission, as it is relieved from liability to the appellee for reasons we have stated."

It appears to us that while the Court of Appeals did not "criticize, or * * * express an opinion" on the award of the Commission, it nevertheless implied that the award should never have been passed.

Appellant relies strongly upon *Fyne v. Industrial Accident Commission,* 138 C.A.2d 467, 292 P. 2d 78 (1956). In *Fyne,* a Mr. Robinson was employed as a carpenter by David Fyne and Ruth Papkin, a co-partnership doing business as "Two Minute Auto Car Wash". The co-partnership had an insurance policy that insured them doing business as the car wash. Robinson sustained an injury while working as a carpenter repairing fire damage which had occurred in an apartment house owned by the co-partnership. The Industrial Accident Commission denied benefits based upon the declarations of the insurance policy covering the co-partnership as the auto wash, and the Appellate Court reversed.

The factual distinction between *Fyne* and the instant case is readily apparent by a review of *Fyne.* There, the California Statute provided that a policy could be restricted or limited and that a failure to restrict or limit meant that the policy was unlimited. The policy failed to limit coverage. Additionally, the carrier in *Fyne* had issued a circular bearing the legend "Published For Producers By Industrial Indemnity Company." [5] The cir-

---

5. The circular provided in part:
"Following are highlights of the most important coverage extensions:
"1- Undisclosed Operations
"Under the 'standard' form no coverage exists for the operations of an employer when such operations are not described in the policy and not incidental to the operations described. This is true regardless of where the operations were performed.
*"Such undisclosed operations are fully covered under our new policy."*

cular stated that the new Workmen's Compensation policy of the type issued to Fyne now would provide that such undisclosed operations would be fully covered by the new policy. The California Court said:

> "When, despite these emphatic and meticulously detailed requirements governing the 'limitation or restriction of coverage,' an insurer writes a policy with the all-inclusive coverage of the policy here involved and attaches no endorsements or riders of any kind to it, the conclusion is irresistible that the insurer intended full coverage without limitation or restriction of any kind whatsoever."

In *Fyne,* the case turned on the new form of policy, the California Statute regarding limiting the policy, and the circular, none of which are present in the instant case. *Fyne* is inapposite.

100 C.J.S. Workmen's Compensation § 372, provides in pertinent part:

> "The coverage of an insurance company does not include compensation to employees injured in performing work not included in the policy, or to persons who are not employees of insured within the requirements of the compensation act, and an insurance carrier may defend on the ground that it had no policy outstanding covering the employment in which the injury was incurred. So, the policy covers only the business specified therein and an enlargement or extension thereof, and does not cover a subsequently acquired separate business not operated in connection with, or as part of, the original business."

See *Hardware Mutual Casualty Co. v. Collier,* 69 Ga. App. 235, 25 S.E.2d 136 (1943), where it was held that a policy of insurance covering a wholesale gasoline and oil business did not cover a subsequently acquired cotton

gin enterprise, notwithstanding the fact that the employer was the same and that some of the employees were likewise the same.

It has been held in *National Automobile Insurance Co. v. Industrial Acc. Com. of California*, 21 Cal. App. 2d 156, 68 P. 2d 748 (1937) that an employer obtaining a Workmen's Compensation policy covering his employees in the installation of "water mains and connections" was not covered when his employee was injured while engaged in sewer construction because the carrier did not know that the employer was constructing sewers until after the accident and that the two businesses were not related.

In *Barron v. Standard Acc. Ins. Co.*, 122 Tex. 179, 53 S.W.2d 769 (1932), it was held that a policy of insurance covering the employees of an employer engaged in a stone cutting and polishing operation would not be extended in law to include in the coverage the same operators-employees working in a stone quarry. We recognize that the Texas court was dealing with an elective Workmen's Compensation Statute, while Maryland's Compensation Act is mandatory. Nevertheless, we think that the rationale of *Barron* is persuasive. It would be manifestly unfair to hold Home liable under its policy for coverage of a business that it admittedly knew nothing about and never contemplated insuring when it issued its Workmen's Compensation policy and renewal thereof. The policy issued by Home covered the employees of Flamingo, engaged in the restaurant business and did not embrace Chaney's employees in an unrelated business.

*Judgment affirmed.*
*Costs to be paid by appellant.*