HARRY WALLER ᴇᴛ ᴀʟ. *v.* GILBERT KEENE ᴇᴛ ᴀʟ.

[No. 588, September Term, 1974.]

*Decided May 28, 1975.*

The cause was argued before MOYLAN, MENCHINE and LOWE, JJ.

*Alfred M. Porth* and *Theodore B. Cornblatt,* with whom were *Smith, Somerville & Case* on the brief, for appellant Harry Waller. *Norman F. Summers,* with whom was *Julian S. Brewer* on the brief, for other appellant.

*Louis G. Close, Jr.,* with whom were *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for Pennsylvania National Mutual Casualty Insurance Company, one of appellees.

MENCHINE, J., delivered the opinion of the Court.

This is an appeal from a reversal by the Circuit Court for Baltimore County of a decision of the Workmen's Compensation Commission (Commission). The Commission had ruled that Gilbert Keene (claimant) had sustained an accidental injury arising out of and in the course of his

employment by A & L Contractors,[1] and that Leonard W. Pauza (Pauza) was protected as an employer by the terms and provisions of a policy of workmen's compensation insurance issued to him as an individual by Pennsylvania National Mutual Casualty Company (Penn National). The Commission also found Harry Waller (Waller) to be a statutory employer, thereby causing him and his insurer, Nationwide Mutual Insurance Company (Nationwide) also to be responsible for compensation benefits due to the claimant by reason of the provisions of Article 101, § 62.[2] Penn National appealed.

In the Circuit Court for Baltimore County the cause was submitted to Judge Kenneth C. Proctor, sitting without a

---

1. A & L Contractors was the trade name used by Leonard W. Pauza and Arthur Grimes, copartners.

2. Waller was the principal contractor and A & L Contractors were subcontractors on a project known as Queen Anne Village. Article 101, § 62 reads as follows:

"§ 62. Employees of subcontractor may claim against contractor.

When any person as a principal contractor, undertakes to execute any work which is a part of his trade, business or occupation which he has contracted to perform and contracts with any other person as subcontractor, for the execution by or under the subcontractor, of the whole or any part of the work undertaken by the principal contractor, the principal contractor shall be liable to pay to any workman employed in the execution of the work any compensation under this article which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal contractor, then, in the application of this article, reference to the principal contractor shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed.

Where the principal contractor is liable to pay compensation under this section, he shall be entitled to indemnity from any employer, who would have been liable to pay compensation to the employee independently of this section, and shall have a cause of action therefor against such employer.

Nothing in this section shall be construed as preventing a workman from recovering compensation under this article from the subcontractor instead of from the contractor.

Whenever an employee of a subcontractor files a claim under this article against the principal contractor, the principal contractor shall have the right to join the subcontractor or any intermediate contractors as defendant or codefendant in the case."

jury. Judge Proctor held that the claimant was employed by a partnership consisting of Leonard W. Pauza and Arthur Grimes, t/a A & L Contractors (partnership), and that the insurance policy issued by Penn National to Pauza as an individual did not provide insurance to the partnership. The trial court affirmed that part of the Commission's order finding that Waller as statutory employer and Nationwide, his insurer, were liable for the payment of compensation benefits to the claimant. Waller, Nationwide and Pauza have appealed.[3]

Pauza, on appeal, asks:

> Is John W. Walter, trading as Col-Mar Insurance Company, the agent of Pennsylvania National Mutual Casualty Insurance Company under the Doctrine of Estoppel?

Waller and Nationwide, on appeal, suggest that:

> "The lower court erred in ruling that the policy of workmen's compensation insurance issued by Penn National to Leonard Pauza did not cover the injury sustained by the claimant, who was employed by a partnership of which Pauza was a member."

### The Facts [4]

Pauza, through his broker, John W. Walter, t/a Col-Mar Insurance Agency (Col-Mar), in 1970 had obtained a policy of workmen's compensation insurance written by Penn National through J. B. Schaftel Company (Schaftel), its general agent. The policy involved in the subject proceeding, the second renewal of that earlier policy, had been issued for

---

**3.** The liability of Waller and Nationwide to the claimant is not disputed. There appeal is not rendered moot by this circumstance, however, because a principal contractor and his insurer are entitled to indemnity from the subcontractor and may participate in his appeal. Core Contracting Co. v. Schaeffer, 151 Md. 494, 135 A. 318.

**4.** The factual recitation combines express findings of fact by the trial judge supported of record by competent evidence and uncontroverted facts established in the record.

the period August 5, 1972 to August 5, 1973. The first page of the policy thus described the insured:

| | |
|---|---|
| Leonard William Pauza | INDIVIDUAL    x |
| 25 Prospect Avenue | PARTNERSHIP ___ |
| Catonsville, Baltimore Co., | CORPORATION ___ |
|     Maryland 21228 | OTHER    ___ |

Under the heading of "Classification of Operations" the insured was described as engaged in "Carpentry installation of cabinet work or interior trim." The estimated payroll was $10,000.00 annually. At all times prior to September, 1972 Pauza had conducted his carpentry business as an individual.

Sometime in September, 1972 Leonard William Pauza and Arthur Grimes formed a partnership under which they traded as A & L Contractors. They had no prior association as employers. Contemporaneously with the formation of that partnership, Pauza and Grimes as partners, entered into a contract with Waller for "all carpentry work (rough and trim) in Section 1, consisting of 9 Buildings, 7 "A" Buildings (43 units) & 2 "D" Buildings (12 units), project known as QUEEN ANNE VILLAGE." New State and Federal tax numbers were issued to the partnership upon application. Pauza continued as an individual employer on other projects. On September 29, 1972 claimant was employed by the partnership to work on the Waller job. He was paid by A & L Contractors, by partnership check. He had never been employed by Pauza individually.

Pauza, believing that the new partnership and the broadened character [5] of carpentry work undertaken by the partnership would affect his workmen's compensation insurance, contacted his broker, Col-Mar on or about

---

5. Pauza as an individual had limited his operation to interior carpentry, a category calling for a premium cost of $2.65 per $100.00 of payroll. His estimated payroll was $10,000.00 annually. The partnership's broadened operation added a category calling for a premium cost of $3.07 per $100.00 of payroll. The partnership's estimated payroll was $60,000.00 annually.

September 27, 1972, told him about the formation of the partnership and requested that requisite changes in workmen's compensation insurance be effected. Col-Mar submitted a bill to A & L Contractors, care of Pauza, for $133.00 for the estimated additional premium under the existing policy. Pauza, believing that the additional premium cost would exceed the billed figure, sent Col-Mar a partnership check for $200.00 that was deposited by Col-Mar. Col-Mar did not notify Schaftel or Penn National of Pauza's change in status or the broadened nature of the partnership operation until November 29, 1972, eleven days after the accidental injury to claimant. Neither Schaftel nor Penn National ever received any part of the $200.00 paid by the partnership to Col-Mar.

The partnership was obligated, under the terms of its contract with Waller, to "furnish all required Insurance Certificates for Workmen's Compensation * * * before actual work commences." Schaftel was requested to issue and on September 27, 1972 did in fact issue to Waller a Certificate of Insurance, certifying that the Pennsylvania National Mutual Casualty Insurance Company had issued to Leonard William Pauza, 25 Prospect Avenue, Catonsville, Maryland 21228 a Workmen's Compensation insurance policy providing coverage within the statutory limits provided by the Workmen's Compensation Law of the State of Maryland and Employer's liability to a limit of $100,000.00 by policy number WC000094642 for a policy term from 8/5/72-73. Waller's general superintendent pointed out to Pauza that the certificate had been issued under a policy insuring Pauza only as an individual. Pauza, however, made no effort to obtain a revised certificate nor did Waller demand one.

### Estoppel

There can be little doubt that an estoppel would arise against Penn National if Col-Mar was its agent. The trial court found that Col-Mar at no time held himself out as agent of Penn National. The record fully supports the finding. There is not a scintilla of evidence that Schaftel or Penn National had knowledge of the formation of Pauza's

partnership with Grimes nor of the broadened scope of Pauza's operations until after injury to the claimant. Under such circumstances it is quite clear that Col-Mar was the agent of Pauza and not the agent of Penn National. Article 48 A, § 166; *American Casualty Co. v. Ricas*, 179 Md. 627, 631, 22 A. 2d 484, 487.

The case of *Reserve Insurance Company v. Duckett*, 240 Md. 591, 214 A. 2d 754, cited by Pauza, recognized the validity of the doctrine that an insurer may be bound by one not specifically authorized, if the insurer's actions were such as reasonably would lead a third party to believe that the agent had authority to bind the insurer. The subsequent appeal of that case after remand, however, *Reserve Insurance v. Duckett*, 249 Md. 108, 238 A. 2d 536, demonstrates that the decision is inapposite here. At page 115 [540] of the second appeal, the Court stated:

> "Reserve was aware that Davis appeared on the face of its policies as agent and from this was charged with knowledge that Davis was issuing its policies as agent. Although in a two-year period, 1960-1962, Reserve received 1011 copies of its policies with Davis appearing as agent, it never repudiated Davis or denied the validity of the issued policies."

In the subject case it is uncontradicted that Penn National had a firm rule against brokered business and had no knowledge whatever that Pauza's policies had been obtained through Col-Mar. All Pauza policies had been issued for Penn National by Schaftel.

We find no estoppel.

### Coverage Under Penn National Policy

The question whether a workmen's compensation insurance policy, issued to an individual, affords him protection against claims of an employee of a subsequently formed partnership of which he is a member, is a matter of first impression in Maryland. The authorities in other jurisdictions are divided upon the question.

The leading case espousing the doctrine that such an insurance policy provides coverage is *Reed v. Industrial Accident Commission*, 73 P. 2d 1212 (S. Ct. Cal. 1937), 114 A.L.R. 720. In *Reed*, a building contractor obtained a policy of workmen's compensation insurance for an insurer. He thereafter became associated with another in the conduct of a building business. On those facts the Court said at 1213 [721]:

"The position of said respondent is, in brief, that the policy insured W. B. Mellott, an individual, and not the partnership of Gordon & Mellott; that Reed was employed by the firm of Gordon & Mellott, and not by W. B. Mellott; and that consequently, the policy did not cover the injury, because Reed's employer, the partnership, was not insured. This position is unsound on principle and contrary to prior decisions in this state.

"The underlying fallacy in respondent's argument is the assumption that the partnership is a distinct unit, separate from the members thereof. Occasional suggestions of this 'entity' theory of partnership are found in statutes or decisions, but, apart from exceptional situations, a partnership is not considered an entity, but an association of individuals. See First Nat. Trust & Savings Bank v. Industrial Accident Commission, 213 Cal. 322, 331, 2 P.2d 347, 78 A.L.R. 1324; 9 Cal. L. Rev. 119. In consonance with this view, an employee of a partnership is an employee of each of the partners, and no individual partner may escape liability to such employee on the ground that only the partnership and not the individuals composing it can be held. It is immaterial whether the liability of the partners in this situation is joint and several, or joint, for even in the case of joint liability, a several judgment may be had against an individual partner by proper joinder and pleading. See Palle v. Industrial Commission, 79 Utah 47, 7 P.2d 284, 81

A.L.R. 1222; Merchants' Nat. Bank v. Clark-Parker Co., 215 Cal. 296, 9 P.2d 826, 81 A.L.R. 778. The result is that W. B. Mellott, a partner in the firm of Gordon & Mellott, was an employer of petitioner Reed, and was undoubtedly liable to Reed for workmen's compensation. Since W. B. Mellott procured insurance with respondent company to cover such liability, and paid the required premium therefor, the company must perform its obligation by paying the award."

A dissenting Justice in *Reed,* after pointing out that the California workmen's compensation statute required the word "employer" to include every firm and voluntary association, grounded his dissent upon the fact: (p. 1215 [724]) "The only contract which the insurer made in this case was with W. B. Mellott, an individual. It did not agree to insure either a partnership of which Mr. Mellott might thereafter become a member, or the individual liability of Mr. Mellott as a member of such a partnership."

In *Weir v. New Amsterdam Cas. Co.,* 20 A. 2d 12, the Court of Common Pleas of New Jersey, Passaic County, although declaring that it was unnecessary to decide the question, cited the *Reed* decision. On appeal, *Weir v. New Amsterdam Cas. Co.,* 24 A. 2d 562, the Supreme Court of New Jersey, although not citing *Reed, supra,* adopted the view expressed therein, declaring at 564:

"The prosecutor's third point goes to the proposition that the policy did not cover the award inasmuch as the policy was written to indemnify Harry Pilchman and was not written in coverage of the co-partnership of Harry Pilchman and Louis Lipschultz. We are of the opinion, however, that the policy did cover the award. Assuming the fact to be that at the time of the employment of Weir, as well as at the time of the accident, the employer was a partnership, it remains that the insured was, as a member of that partnership, an employer of Weir and that a judgment or award obtained by Weir

against the partnership was collectible from Pilchman. The situation is quite different from that which exists when the partnership is the insured employer and the hiring is by one of the members individually in an employment outside the partnership. The accident sued upon arose out of and in the course of an employment in the business conducted under the trade name of 'Clinton Hill Painters and Decorators'. Pilchman, as an employer therein, was liable. We perceive no sound reason why his insurer, which undertook to indemnify him as an employer in that business, should not be held responsible. It is made liable by its contract."

(Decision affirmed *per curiam* 28 A. 2d 126). See also, *Parker v. Zanghi*, 131 A. 2d 802, 807 (Superior Ct. of N. J. App. Div. 1957).[6]

*Greenstein v. Kastonowitz*, 24 N.Y.S.2d 792 (S. Ct. App. Div., 3rd Dept. 1941), appeal denied 26 N.Y.S.2d 608, applied the rule under circumstances where the intent to cover the business was not questioned.

In *U. S. F. & G. v. Collins*, 95 So. 2d 456 (S. Ct. of Miss. 1957), under similar facts, the Court said at 460:

"The general rule is that a compensation policy insuring an individual member of a partnership covers an injury to an employee of the partners. 45

---

6. Penn. National one of the appellees, has cited Felice v. Felice, 112 A. 2d 581 (Superior Ct. N. J. App. Div. 1955) as reflecting a contrary view. It is true that the Court in Felice declared at 583:

"For purposes of workmen's compensation an employee of a partnership cannot be said to be an employee of an individual member thereof. Each partner has the authority to engage employees in the ordinary course of business and to bind the firm in so doing. State Compensation Insurance Fund v. Industrial Accident Commission, 28 Cal.App.2d 474, 82 P.2d 732 (D.Ct.App. 1938); 40 Am.Jur., Partnership, § 161, p. 243. Such persons are employees of the entity and not of the individuals who form it."

The Supreme Court of New Jersey, however, in Mazzuchelli v. Silberberg, 148 A. 2d 8, declaring the quoted language to be unnecessary to the decision in Felice, cited *Weir* with approval.

C.J.S. Insurance § 826, p. 877; 58 Am.Jur., Workmen's Compensation, Section 565; Reed v. Industrial Accident Commission, 1937, 10 Cal.2d 191, 73 P.2d 1212, 114 A.L.R. 720; Brollier v. Van Alstine, 1942, 236 Mo.App. 1233, 163 S.W.2d 109." [7]

In *Clawson v. General Insurance Co.*, 412 P. 2d 597 (S. Ct. Idaho 1966), although *Reed, supra,* was cited in a case involving joint venturers and its rule was there applied, the Court left open [p. 600] the question whether the decision would have been otherwise had a partnership been involved.

Other cases in the State of Missouri, formerly adhering to the *Reed* doctrine were expressly rejected in a later decision.[8]

The leading case espousing the doctrine that such insurance policy does not provide coverage is *Kalson v. Industrial Commission*, 21 N.W.2d 644 (S. Ct. Wisc. 1946). In *Kalson,* the Wisconsin statute defined "employer" as

---

7. The opinion's characterization of the "general rule" appears over-stated. It is true that the C.J.S. citation declares, "A policy of workmen's compensation insurance insuring an individual member of a partnership covers an injury to an employee of the partnership." The cases cited to support the text were as follows: Cal. — Reed v. Industrial Accident Commission, 73 P. 2d 1212, 10 Cal. 2d 191, 114 A.L.R. 720 — Zimmerman v. Industrial Accident Commission, 6 P. 2d 291, 119 Cal. App. 253. N.Y. — Greenstein v. Kastonowitz, 24 N.Y.S.2d 792, 261 App. Div. 858, appeal denied 26 N.Y.S.2d 608, 261 App. Div. 1011. The pertinency of two of those cases has been discussed *supra.* Zimmerman is authority for nothing more than that a policy issued to one individual although according no protection to a person subsequently becoming his partner, does accord protection to the named assured "who continued in the operation of the business under the same trade name."

It is also true that the Am.Jur. citation declares:

"A workmen's compensation insurer has been held liable on a policy issued to an individual employer who afterward formed a partnership with another, for the amount of an award of workmen's compensation to an injured employee of the partnership, upon the theory that, a partnership not being an entity, an employee of a partnership is an employee of each individual partner."

That text is supported only by *Reed, supra.*

The case of Brollier v. Van Alstine, cited by the Mississippi Court, was rejected by the Supreme Court of Missouri in Crall v. Hockman, 460 S.W.2d 668 (1970) as discussed *infra.*

8. The decision in Crall v. Hochman, *supra,* N. 7, also rejected the prior decision in Blew v. Conner, 328 S.W.2d 626 (1959).

follows: "Every person, firm and private corporation * * * who employs * * *." Under factual circumstances similar to the subject case, the Court said at 645-46:

"It is conceded that the word 'firm' as used in the phrase 'Every person, firm and private corporation (including any public service corporation) who usually employs 3 or more employees', which is in sec. 102.04 (2), Stats., is synonymous with the word 'partnership'. But we cannot sustain the plaintiffs' contention that by use of the word 'firm' in that phrase it was not intended to treat, under the compensation act, a firm as a separate entity, as distinguished from an aggregation of the individuals who compose the partnership. If it had been the legislative intention that every person who is a partner in a firm should as such partner be considered an employer of the firm's employees, then, in view of the term 'every person', which precedes the word 'firm' in the statute, there would have been no occasion to, and no purpose would be served by the use therein of also the word 'firm'. In other words, if it was the legislative intention that, in determining who is an employer liable for compensation under Ch. 102, Stats., a partnership was not to be treated as a separate entity, but that it was to be considered an aggregation of the individuals who are the partners thereof, and therefore every person who is such a partner is by virtue of that relationship to be considered also an employer of the firm's employees, then the term 'every person' in sec. 102.04 (2), Stats., would have been sufficient to include all of the partners, and consequently the use of also the word 'firm' in the statute would be superfluous. But that is not the consequence, and there is a purpose duly served in the statute by the word 'firm', when it is considered to evidence the legislative intention that if a firm is an employer it shall be treated as a legal entity,

separate and distinct from the persons who are the members thereof."

The doctrine declared in *Kalson* has been adopted in other jurisdictions.

In *Toenberg v. Harvey*, 49 N.W.2d 578 (S. Ct. Minn. 1951), the workmen's compensation statute read: "The term 'employer' means every person who employs another to perform a service for hire and to whom 'the employer' directly pays wages, and includes any person, corporation, copartnership, or association * * *." The Court reversed an award as to a partnership employee against the compensation insurer of one of the individuals comprising the partnership, the Court saying at 581:

> "Under the facts and circumstances here and the statute and cases above cited, this partnership must be treated as a separate employing entity for the purpose here involved. It does not follow from that that for all purposes a partnership is to be regarded as a legal entity. The partnership was Toenberg's employer. John Harvey was not. There was no contractual relationship between Toenberg and Harvey as an individual, and liability under the compensation act arises by virtue of contract. A contract of hire — a relationship of employer-employee — is a condition precedent to benefits and duties under the statute."

In *Mendonca Dairy v. Mauldin*, 420 P. 2d 552 (S. Ct. Okla. 1966) an employee of a partnership sought compensation benefits from an individual member of the partnership and the insurer covering that individual. Rejecting the claim, the Court said at 555:

> "A partnership is a separate entity and constitutes a separate employer distinct from any of the members constituting such partnership. *Anderson v. Duke*, 193 Okl. 395, 143 P.2d 800. Consequently, there was no relationship of employer and employee between Mrs. Van Hook, as

an individual, and claimant, and any insurance policy issued to her individually which covered her employees does not apply to claimant."

The non-coverage position is best articulated in *Crall v. Hockman*, 460 S.W.2d 668 (S. Ct. Mo. 1970), wherein the Court, after citing with approval the quotation from *Kalson, supra*, said at 671-72:

"We agree with the analysis and reasoning of the Wisconsin court [Kalson, supra] and the dissenting opinion of Judge Eager in Blew v. Conner, supra.[9] They give meaning and purpose to each of the words enumerated by the general assembly in defining what should constitute an employer under the Compensation Act. The specific mention of 'partnership' in the definition then means something. It is true that generally Missouri has adopted the aggregate rather than the entity theory of partnership. Ward v. State Farmers Mutual Tornado Insurance Company of Missouri, Mo., 441 S.W.2d 1. However, so has Wisconsin, but the Wisconsin Supreme Court pointed out in Kalson that this did not mean that the general assembly could not and did not intend otherwise in defining an employing entity under the Act. They took the

---

**9.** 328 S.W.2d 626. The dissenting opinion had declared, *inter alia,* (p. 632):

"Section 287.030 of our Workmen's Compensation Law provides that the word 'employer' is construed to mean: 'Every person, partnership, association, corporation, trustee, receiver, * * * using the service of another for pay; * * *.' It seems obvious that our act appears thus to recognize a partnership, as distinguished from its constituent members, as an employing entity. And it thus seems inappropriate to consider our present question as one depending upon the individual liability of a partner for partnership obligations; the mere existence of a severable liability for partnership debts is not determinative here. All liability under the Compensation Act arises by virtue of specific contract relationship between an employer and an employee; it is difficult to see how each individual partner may properly be considered as an employer in his sole capacity when the real employment contract is with the partnership; *and this is true regardless of any ultimate individual liability.*" (Italics supplied.)

position that when the legislature designated such firm as an employing entity, that was what the general assembly intended. Judge Eager's dissenting opinion takes a similar position with respect to the Missouri statute, and we conclude that this represents a correct interpretation of the language of the Act. It is consistent with the definition in § 287.020, subd. 1 of an employee as a person 'in the service of *any employer, as defined in this chapter.*' (Emphasis supplied.)"

Maryland Code Article 101, § 67 (2) (1974 Cumulative Supplement) defines Employer as follows:

"(2) 'Employer' means those persons who fall within the requirements of § 21 (a) [10] of this article including a person, partnership, association, corporation and the legal representatives of a deceased employer, or the receiver or trustee of a person, partnership, association or corporation employing workmen."

The decisions adopting the *Reed* doctrine seem to us to be specious, in that their stress is placed upon the personal responsibility of partners for partnership obligations. Yet, the true issue presented in *Reed* and its progeny did not involve a *partner's* ultimate responsibility as an individual to respond personally for partnership obligations. Rather, their rule of law imposed upon the *insurer* of an individual a duty and obligation it had not contracted to perform. When an individual becomes associated with others in a partnership he continues to be bound by law to full or partial individual liability for partnership obligations. He knows this when he *voluntarily* changes his status. It is a *non sequitur*, however, to suggest that the insurer of such an individual, without its agreement — indeed without its knowledge — should be compelled to carry the heavier

---

**10.** § 21 (a) (1) provides, *inter alia*: "(a) *Coverage of Employers.* — The following shall constitute employers subject to the provisions of this act: (1) Every person that has in this State one or more employees subject to the act." None of the exemptions contained in the section are applicable here.

burden of obligations thereby assumed by such individual. Under the facts of this case, liability under the policy written by Penn National can attach only if it is compelled to perform a new and different obligation than that which it had undertaken to perform. *Chaney v. Home Indemnity Co.*, 14 Md. App. 660, 288 A. 2d 190. We decline to require it to do so.

*Judgment affirmed.*
*Costs to be paid by appellants.*