Pearle Dee Chambers v. Macon Wholesale Grocer Company, Employer, and Casualty Reciprocal Exchange, Its Insurer, Appellants.—70 S. W. (2d) 884.

Division One, April 19, 1934.

Franklin E. Reagan for appellants; Harvey T. Brock of counsel.

1218

*George N. Davis, Waldo Edwards* and *Chas. W. Shelton* for respondent.

HYDE, C.—The case, coming to the writer by reassignment, is an appeal from a judgment of the Circuit Court of Chariton County, reversing an award of the Workmen's Compensation Commission. The basis of respondent's claim and the issues are as stated in respondent's brief, to-wit:

"The facts out of which this action arose are as follows: At the time of the accident, and for a long time prior thereto, William G. Chambers, the deceased, was, and had been, a traveling salesman working on behalf of the Macon Wholesale Grocer Company for a salary of $1,800.00 a year. Claimant, Pearle Dee Chambers, was his widow and only dependent. On December 3, 1931, while on one of his regular trips as salesman for the Macon Wholesale Grocer and calling on the customers of the Macon Wholesale Grocer Company, Mr. Chambers lost his life in an automobile accident in Chariton County, Missouri. (Appellant claims that the accident occurred on a trip which had nothing to do with the business of the Grocer Company.) Claim was filed by Pearle Dee Chambers, in due time, before the Workmen's Compensation Commission, and the insurance company, defendant herein, by its attorneys for itself and for the Macon Wholesale Grocer Company, filed an answer claiming, First: That the deceased, William G. Chambers, was not an employee of the Macon Wholesale Grocer Company; and, Second: That the accident in which the deceased Chambers was involved did not arise out of or in the course of deceased's employment.

"At the hearing the claim was made that because the Macon Wholesale Grocer Company was not incorporated and William G. Chambers had an interest in the business, therefore, he could not be an employee."

The findings and award of the commission were, as follows:

1220

"The above parties having submitted their disagreement or claim for compensation for the above accident to the undersigned members of the Missouri Workmen's Compensation Commission and after hearing the parties at issue, their representatives, witnesses and evidence, the undersigned hereby find in favor of the above alleged employer and insurer and against the above dependent and award no compensation for the above accident.

"We find from the evidence that the deceased, William G. Chambers, was *one of the partners who together owned and operated the Macon Wholesale Grocer Company. As such he was not an employee within the meaning of the Compensation Law.*"

The circuit court on respondent's appeal therefrom rendered the following judgment:

"The court having examined the record in the above entitled cause and arguments submitted by the plaintiff and defendant by their respective attorneys, doth find:

"That the order and finding of the Workmen's Compensation Commission of Missouri in the above entitled cause, to-wit: 'We find from the evidence that the deceased, William G. Chambers, was one of the partners who together owned and operated the Macon Wholesale Grocer Company. As such he was not an employee within the meaning of the Compensation Law,' is, according to the law and evidence, erroneous, and the court doth further find from the record and evidence in said cause *that the deceased, William G. Chambers, was at the time of his death an employee of the defendant, Macon Wholesale Grocer Company, under the provisions of the Workmen's Compensation Act of Missouri,* and as such both said William G. Chambers and his dependents entitled to the benefit and compensation provided for in such act; provided the Commission finds that the accident to W. G. Chambers arose out of and in the course of his employment; that the Casualty Reciprocal Exchange, the insurer herein, had insured the Macon Wholesale Grocer Company and its employees under the provisions of said Workmen's Compensation Act and that said insurance at the time of the death of William G. Chambers, insured the Macon Wholesale Grocer Company against accident to the said William G. Chambers, arising out of and in the course of his employment.

"WHEREFORE, It is ordered by the Court that said cause be remanded to Workmen's Compensation Commission of Missouri to be proceeded with in accordance with the finding of this court above set out."

Appellant, now appealing from that judgment of the circuit court, says that court erroneously and in excess of its powers made a new finding of fact, namely, the above italicized portion of its judgment stating that the court found William G. Chambers to be

an employee of the Grocer Company and also, by implication at least, that the Grocer Company was not a partnership. We do not think that this was meant by the court to be a finding of fact, but rather was intended as a ruling of law reversing the commission's ruling of law that Chambers could not be an employee of the grocer company because he was a partner in it. In other words, the court held that even though the grocer company was a partnership, and Chambers was a partner therein, nevertheless he could also be its employee within the meaning of the Compensation Act. We will treat the judgment as having that effect. It could not be otherwise treated because the court had no authority to make different findings of fact, and because it is apparent that (and no one disputes it) there was substantial evidence to support the finding of the commission that the grocer company was a partnership and that Chambers was a partner therein. There was, in fact, no evidence or claim to the contrary at the hearing, so that this was not really a controverted issue.

There is also much in the briefs upon the question of estoppel by reason of respondent's claim that the insurer here scheduled William G. Chambers as an employee of the grocer company and received a larger premium, by reason thereof, for its insurance policy. We do not consider it either necessary or proper to rule the question of estoppel. In the first place these facts are not shown by the evidence. Moreover, does the Workmen's Compensation Commission have any authority to decide upon and grant relief for rights arising either by estoppel or by contract? Are not these judicial questions to be decided by courts in actions at law brought to enforce them? Is not the authority of the Workmen's Compensation Commission limited to determining what rights are granted and what awards are authorized by the Workmen's Compensation Act? If the other partners claim that the insurance company contracted to insure William G. Chambers for their benefit they can bring an action at law to determine that question. We shall determine respondent's rights herein from the terms of the Workmen's Compensation Act. The single issue, therefore, is: Can William G. Chambers, one of the partners in the partnership firm sought to be held as the employer herein, be an employee thereof within the meaning of the Compensation Act?

The evidence, as to the partnership and the activities of its members, was that none of the other partners gave any time to or drew any pay from the partnership; (unless respondent did, which is not clear); that they got nothing "other than dividends;" that William G. Chambers was paid $150 per month; that he received "the profits in addition to his salary;" and that "when there was no profits," he was "still paid his salary." The evidence as to his duties was that "he was the head of the concern and chief managing officer;"

that he had "the right to hire and fire employees;" that "he gave orders in general what was to be done around the place;" and that he also traveled about once a week over the company's territory to "call on his customers, sell goods, and collect." On his return from trips "he reported the collections he made. . . . He brought back orders if he had taken orders, or if any grievances was out on the territory he tried to straighten those out and would report those." These trips often took two days, and on such occasions, he usually spent the night at a farm, near Mendon, in which he owned an interest. Further testimony concerning his duties was, as follows:

"Q. What were Mr. Chambers' duties, George Chambers' duties? A. Well, his duties were varied. He tended to all outside duties connected with the business, as salesman and collector. He was also the buyer. Was also the manager. . . . Q. And did those duties require him to be away from Macon much constantly—in and out? A. Yes, sir. Q. How did he travel? A. He traveled by autos mostly; sometimes by train; according to the roads. Q. And who paid his expenses? A. The Macon Wholesale Grocer Company. . . . Q. Just in a general way now tell what he did as a salesman and buyer. A. Well, in the office he attended to the buying and such papers as was necessary for a manager to sign. He also acted in the capacity of salesman and credit man and when he had canceled checks he went out to collect the money on checks that were returned 'No Funds' and such as that. Q. What did he do about calling on the trade? A. He took orders. . . . Q. He gave orders to all the employees that worked there? A. Yes, sir. Q. Who around there gave him any orders? A. No one that I know of. Q. In other words, he was the boss of the concern? A. Yes, sir."

This seems to be the first presentation of this question, in this State, since the adoption of a Workmen's Compensation Act. It has been considered in a number of cases in other jurisdictions. The leading case on the subject is Ellis v. Ellis (1905), 1 K. B. 324, 74 L. J. K. B. N. S. 229, 53 W. R. 311, 92 L. T. N. S. 718, 21 T. L. R. 182. There a partnership consisting of three partners operated a coal mine. Two of the partners were engaged in other occupations and took no active part in the operations. "A short time after the formation of the partnership the partners orally agreed among themselves that, if any partner did any work at the colliery, he should be paid like any ordinary workman. The deceased man Ellis, who had practical experience as a working miner and engineer, acted in the capacity of a working foreman at the colliery, working himself, sometimes above ground in charge of the engine and otherwise, and sometimes underground, and directing the operations of the other workmen employed. He had received by way of wages out of the proceeds of the business on the average about 33s. a week." His dependents

made a claim under the English Workmen's Compensation Act. The court denied this claim, saying:

"The question is whether, having regard to his position as one of the partners, he can be regarded as a workman in the employ of the partnership, and the partners as his employers, within the meaning of the Act. When one looks at the provisions of the Act, they do not appear to be applicable to a case like the present. The supposition that the deceased man was 'employed,' within the meaning of that term as used in the Act, would appear to involve that he, as one of the partners, must be looked upon as occupying the position of being one of his own employers. It seems to me that, when one comes to analyze an arrangement of this kind, namely, one by which a partner himself works, and receives sums which are called wages, it really does not create the relation of employers and employed, but is, in truth, a mode of adjusting the amount that must be taken to have been contributed to the partnership assets by a partner who has made what is really a contribution in kind, and does not affect his relation to the other partners, which is that of co-adventurer and not employee. Such a partner cannot put himself in the position of not being a partner when he is one, or of being a workman employed, when that position would involve that he would be both employer and employee. The definition of a 'workman' given in the Act might cover a person in such a position, apart from the difficulty that arises from the consideration that he would be his own employer; but that is not conclusive, because the applicability of the Act appears to depend not merely on the question whether the injured man was a workman within the definition given by the Act, but also on the existence of the relation of employer and workman. Sec. 1, sub-sec. 1, provides that, 'if in any employment to which this Act applies personal injury by accident arising out of and in the course of the employment is caused to a workman, *his employer shall*, subject as hereinafter mentioned, *be liable to pay compensation* in accordance with the first schedule to this Act.' That section appears to me clearly to contemplate a relation between two opposite parties, of whom one is employer and the other employee. It seems to me obvious, when the true position of the deceased is analyzed, that he was not such a workman as is contemplated by the Act, and that a person cannot for the purposes of the Act occupy the position of being both employer and employee. The short point upon which this case depends is that the deceased man was not really an employed person with employers such as the Act contemplates." (Italics ours.)

The case which goes to the greatest extreme the other way is Ohio Drilling Co. v. State Industrial Commission (Okla.), 207 Pac. 314, 25 A. L. R. 367. The facts there were that four men formed a partnership to engage in the business of drilling wells by machinery; "that

these four men owned the tools and participated equally in the profits; that they each took out $14 per day (as wages) until the tools were paid out;" and that *they employed no one* but did all of the work themselves. One of them was injured and made claim under the Oklahoma Workmen's Compensation Act. The court held he was entitled to compensation, saying:

"We think that the construction of the Workmen's Compensation Act that a member of a partnership, who works for the partnership, and while so engaged is injured, is not an employee within the meaning of the act, is an exceedingly narrow construction of the act, where the sole reason therefor is that stated in the British case, supra, that a member of the partnership cannot place himself in the position of being a workman employer when he is one of the persons giving employment, and to so hold in the instant case would fail to satisfy the rule announced that the act should be liberally construed so as to effect the legislative intent. We see no good reason why the members of a partnership cannot jointly or severally perform the work or labor incident to the success of the joint undertaking and at the same time draw wages from the earnings of the partnership.

"The undisputed testimony of the claimant that the claimant and three others constituted the Ohio Drilling Company, a partnership, and that they shared equally in the profits and each drew wages at the rate of $14 per day, and divided the excess profits equally among themselves, would not preclude the partnership when engaged in a hazardous business from coming within the provisions of the Workmen's Compensation Law, but, on the contrary, would compel the partnership to comply with the provisions of the law requiring it to provide compensation for its injured employees by furnishing insurance in one of the ways provided for in the act, and as it seems was done by the partnership in contracting with the insurance carrier herein for that purpose; and where the four members of the partnership were the sole employees of such partnership in carrying on its business, and one happened to be accidentally injured, affords no reason for holding that in these circumstances there was any infringement of the provisions of the act, or breach of any contract for indemnity with the insurance carrier. The character of the business of the partnership brought them clearly within the provisions of the act, and the fact that the members of the partnership performed the labor incident to its business rather than hire other employees to perform the labor it seems in no way hazarded the risk of the insurance carrier or gave it any reasonable excuse for avoiding its obligation to the partnership or to the State." [See Munter v. Ideal Peerless Laundry, 241 N. Y. Supp. 411, reaching the opposite result in the same situation.]

Carrying the argument of this Oklahoma case to its logical conclusion, then there is no good reason, under our act, why *an individual*

who employs ten employees and *works himself* in the business, in any way, should not be counted as the eleventh employee and thereby be held to be a major employer under Section 3302, and subject to the penalties provided by Section 3323, if he fails to take out insurance. (Or in case of a partnership by counting all the partners.) Likewise, would it not also follow that an individual employer's dependents (if he is killed) would be entitled to recover from his estate (if insolvent and not insured) the amounts provided for dependents of deceased employees by other provisions of the Compensation Act, with the priority over other creditors established by Section 3321? This is not a far fetched situation, it actually was attempted (although unsuccessfully) in Brocken v. Industrial Commission (Colo.), 262 Pac. 521, to obtain compensation for the death of the sole owner and employer of the business insured, who was killed while working with his men. The court there said: "One cannot be another nor can he hire himself." We do not agree that the view, that an employer, whether an individual owner or a partnership owner, is not entitled to be compensated is a narrow construction of the act. It seems to us, on the contrary, to be the only meaning which the Legislature could have intended, and it is not surprising that the overwhelming weight of authority so construes similar statutes. [See authorities collected in annotations, 15 A. L. R. 1288; 25 A. L. R. 376; 44 A. L. R. 1217; 81 A. L. R. 644.] Whatever may be the purposes of the Oklahoma Act, we think that it is plain from all the provisions of our act, as in the case of the English Act, commented upon in the Ellis case, that the language and plan of our act clearly contemplates "a relation between two opposite parties, of whom one is employer and the other employee." In short, *it is a "Workmen's Compensation Act" and not an "Employer's Compensation Act."* That seems to be the real basis of the decision in the Ellis case and the others which follow it, and not merely that "the members of a partnership cannot jointly or severally perform the work or labor incident to the success of the joint undertaking and at the same time draw wages from the earnings of the partnership." Should our Legislature desire to include employers who do work in the operation of their business, it is within its province to enact such a statute. Our Legislature did not adopt such a specific provision, although that had been done in a few other states, when our Compensation Act was adopted. [See Johnson v. Industrial Accident Commission (Cal.), 244 Pac. 321; Skouitchi v. Chic Cloak & Suit Co. (N. Y.), 130 N. E. 299, 15 A. L. R. 1285; Gallie v. Detroit Auto Accessory Co. (Mich.), 195 N. W. 667; but see, also, Thurston v. Detroit Asphalt & Paving Co. (Mich.), 198 N. W. 345.] An examination of the provisions of our Workmen's Compensation Act would seem to indicate that its only purpose is to require employers to furnish compensation for their employees, not to provide a method for compensating themselves.

Section 3301 provides: *"The employer shall be liable* irrespective of negligence, *to furnish compensation* under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, and *shall be released from all other liability* therefor whatsoever." (An employer never was liable to himself nor partners to each other for their injuries.)·

Section 3325 provides: "If the employer be not insured *his liability hereunder shall be primary and direct.* If he is insured his liability shall be secondary and indirect, and his insurer shall be primarily and directly liable."

Section 3321 provides: *"In case of the insolvency of an employer* or his insurer, or the levy of an attachment or an execution against an employer or insurer *shall be entitled to the same preference and priority as claims for wages,* without limit as to time or amount."

Section 3323 provides: *"Every employer* electing to accept the provisions of this chapter, *shall insure his entire liability* thereunder except as hereafter provided, with some insurance carrier authorized to insure such liability in this state, except that an *employer may himself carry the whole or any part of such liability* without insurance upon satisfying the commission of his ability so to do."

Section 3338 provides: *"If the employer and the injured employee* or his dependents *fail to reach an agreement* in regard to compensation under this chapter . . . the commission shall set the date for a hearing."

Section 3304 provides that an employer is *"every person, partnership,* association, corporation, trustee, receiver, the legal representatives of a deceased employer, and every other person, . . . *using the service of another for pay."*

Section 3305 provides that an employee is *"every person in the service of any employer,* as defined in this chapter, under any contract of hire, express or implied, oral or written, or under any appointment or election." (All italics ours. All section numbers from R. S. 1929.)

Defendant says, citing 1 Schneider's Workmen's Compensation Law, section 1, page 2:

"The plan proposed by the Compensation Law is to make the risk of the accident one of the industry itself, to follow from the fact of the injury, and hence compensation on account thereof should be treated as an element in the cost of products, added to the cost of the article and borne by the community in general.

"The scheme is to charge upon the business through insurance the losses caused by it, making the business and the ultimate consumer of its products, and not the injured employee, bear the burden of the accidents incident to the business. The statute contemplates

the protection, not only of the employee, but of the employer, at the expense of the ultimate consumer."

Conceding the plan to be as above stated, we think it is clear that our Compensation Act intended to add to the cost of producing goods, to be borne by consumers, *only the charges of compensating employees* of industries for injuries, and *not for compensation for injuries to the owners of industries,* whether such owner was an individual owner or a partnership owner. [See 1 Schneider, pp. 217-18, sec. 25.] This is, we think, the result even though the act "be liberally construed with a view to the public welfare." [Sec. 3375.] It is apparent from the evidence that had Chambers been the sole owner of the business, he would not have had much greater or different activities, supervision or control. That a partner is solely an owner and employer, and not an employee, within the meaning of our act, would seem to be true from the very nature of a partnership as well as from the terms of the act. A partnership is not an entity apart from the individuals composing it. [47 C. J. 947, sec. 457; 20 R. C. L. 799-806, secs. 1-6.] Certainly no one would contend that a partner who was injured by some defective condition of partnership property or by negligence of a partnership employee could recover from the other partners, who did not participate directly in the act, for the fault would be his as much as theirs. The partners own the property and the business individually just the same as if one of them owned it all, although their ownership is subject to the rights of all. [47 C. J., secs. 176-188-805; 20 R. C. L. 850, sec. 56; 20 R. C. L. 870, sec. 81.] There is a difference, however, between mere joint ownership of property and partnership ownership (20 R. C. L. 806-07, secs. 7-8), and that is the distinction between the Ellis case and Sharp v. Carswell, S. C. 391, 47 S. L. R. 335, 3 B. W. C. C. 552, cited by respondent. "A partner cannot maintain an action at law against his copartners for services rendered or for premises leased to the firm, although the partnership agreement secures to him a fixed sum therefor; . . . nor for money loaned to or paid for the firm;" because "it would be useless for one partner to recover what, upon taking a general account among all the partners he might be liable to return;" and because "such transactions do not result in one partner becoming a debtor to or creditor of the others." [Burdick on Partnership, 333.] Accordingly, the remedy of a partner is an action in equity for an accounting whereby he is entitled to have his claim considered in the distribution of the partnership property. [47 C. J. 802, sec. 250; 20 R. C. L. 873, sec. 84, 924, sec. 139.] Even a cause of action against third persons is a partnership asset and all partners must ordinarily join in the suit. [20 R. C. L. 920, secs. 132-133.]

Besides, the partner's personal ownership of the business, in all

1228

partnership affairs, each partner acts, or has authority to act, both as principal for himself and as agent for the other partners; while an agent, servant or other employee, does not act for himself but for his principal alone; an agent being employed to bring about contractual relations between his principal and third persons, not between such persons and himself; while a servant is employed only to deal with things on behalf of and as directed by his master, not for his own purposes. [2 C. J. 423 and 425, secs. 9 and 12; 20 R. C. L. 882, sec. 94.] It would therefore seem evident that (as the Ellis case so well states) whether a partner receives only a fixed share of profits or, because he puts in more of his time than the others advancing their joint activities, ''receives sums which are called wages, it really does not create the relation of employers and employed, but is, in truth, *a mode of adjusting the amount that must be taken to have been contributed to the partnership assets by a partner who has made what is really a contribution in kind,* and does not affect his relation to the other partners, which is that of co-adventurer and not employee.'' A change of actual relations so as to include, within an act providing compensation only for employees, those in such a fundamentally different relation from that of employer and employee should not be made by construction of the act. If it is advisable to make such a change, it should be made by the Legislature. We, therefore, hold that respondent is not entitled to benefits under our Workmen's Compensation Act.

The judgment is reversed and the cause remanded with directions to enter a judgment affirming the award of the Compensation Commission. *Ferguson* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur, except *Hays, J.,* absent.