WALLER ET AL. *v.* KEENE ET AL.

[No. 72, September Term, 1975.]

*Decided January 8, 1976.*

*Motion for reconsideration filed February 6, 1976; denied February 11, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Theodore B. Cornblatt* and *Alfred M. Porth*, with whom were *Smith, Somerville & Case* on the brief, for appellants.

*Amicus Curiae* brief filed by John W. Walter t/a Col-Mar Insurance Agency, *R. Roger Drechsler* and *Lord, Whip, Coughlan & Green* on the brief.

*Louis G. Close, Jr.*, with whom were *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for Pennsylvania National Mutual Casualty Company, one of appellees. No brief filed on behalf of other appellees.

SINGLEY, J., delivered the opinion of the Court.

This case raises the narrow question whether a policy of workmen's compensation insurance, issued to an individual employer, affords protection to the same insured against claims of an employee of a subsequently formed partnership of which the insured is a member engaged in the same or a similar business.[1] The Workmen's Compensation Commission (the Commission) held that it did; the Circuit Court for Baltimore County held that it did not and entered judgment reversing the order of the Commission. The Court of Special Appeals in *Waller v. Keene*, 26 Md. App. 367, 338 A. 2d 355 (1975) affirmed the judgment of the circuit court. We granted certiorari because the case is one of first impression in Maryland.

Leonard W. Pauza, an interior carpentry contractor, in

---

1. Other issues which were raised below were not pursued before us because the petition for the writ of certiorari raised this single question.

1970 obtained a policy of workmen's compensation insurance written by Pennsylvania National Mutual Casualty Company (Penn National) from his broker, John W. Walter, trading as Col-Mar Insurance Agency (Col-Mar). The policy had been written through J. B. Schaftel Company (Schaftel), Penn National's general agent. The second renewal of the Penn National policy, for the period 5 August 1972 to 5 August 1973, described Pauza as an individual employer, engaged in "carpentry installation of cabinet work or interior trim" having an estimated annual payroll of $10,000.00.

Sometime in September, 1972, Pauza formed a partnership with Arthur S. Grimes, with whom he had not previously been associated in business. Under the partnership name A & L Contractors (A & L), they entered into a contract with Harry Waller, doing business as Arrow Oil Company (Waller), the principal contractor on a construction project known as Queen Anne Village. In this contract, A & L agreed to perform:

> "*ALL CARPENTRY WORK* (Rough and Trim) in Section One, consisting of 9 Buildings, 7 'A' Buildings (42 units) & 2 'D' Buildings (12 units). . . ."

About 27 September 1972, Pauza, who had become concerned about the character and magnitude of the work undertaken by A & L, told Col-Mar of the formation of the partnership, and asked that the insurance policy be appropriately amended. Col-Mar sent A & L a bill for $133.00, an estimated additional premium. Pauza, believing that the additional premium cost would exceed this figure, sent Col-Mar a partnership check for $200.00.[2]

On 29 September, A & L employed Gilbert Keene, who had not previously worked for Pauza. On 18 November,

---

2. The A & L payroll was estimated at $60,000.00 annually. Outside carpentry commanded a rate of $3.07 per $100.00 of payroll; inside carpentry, a rate of $2.65. Any increase in premium attributable to the larger payroll and the higher rate would normally have been ascertained on audit upon expiration of the policy.

while assigned to cut plywood and trim windows by A & L, Keene fell from the roof of one of the buildings in Queen Anne Village where he had gone to secure some nails; was injured, and filed a claim for workmen's compensation against A & L. It was not until 29 November that Col-Mar notified Schaftel of the change in the nature of Pauza's business.

Penn National made payments of compensation for three weeks on 13, 20, and 27 December 1972 to Keene, paid some medical bills, and then denied liability. In a proceeding brought by Keene before the Workmen's Compensation Commission, the Commission ruled that Keene had sustained an accidental injury arising out of and in the course of his employment; that Pauza was protected under the terms and provisions of the policy issued to him as an individual by Penn National; and finally, that Waller was a statutory employer in consequence of the provisions of Maryland Code (1957, 1964 Repl. Vol.) Art. 101, § 62 [3] thereby causing Waller and his insurer, Nationwide Mutual Insurance Company (Nationwide), to be responsible for compensation benefits due Keene subject to indemnification by A & L.

On appeal to the circuit court, that court held that Keene was employed by A & L; that the policy issued by Penn National to Pauza did not insure the partnership, and affirmed that part of the Commission's order which held that Waller, as Keene's statutory employer, and Nationwide, as Waller's insurer, were liable for the payment of compensation benefits to Keene. Waller, Nationwide and Pauza appealed to the Court of Special Appeals, which affirmed the judgment. The case is before us on a petition for the writ of certiorari filed by Waller and Nationwide. We shall reverse the judgment.

As the Court of Special Appeals noted, the question whether a workmen's compensation insurance policy, issued

---

**3.** Art. 101, § 62 makes the principal contractor liable for the payment of workmen's compensation benefits to any workman injured on the job, subject to indemnification from the actual employer. *See* Palumbo v. Nello L. Teer Co., 240 F. Supp. 226 (D. Md. 1965).

to an individual, affords him protection against claims of an employee of a subsequently formed partnership, of which the insured is a member, engaged in the same or a similar business, is one of first impression in Maryland.

The cases holding that coverage is afforded under such circumstances, *e.g., Reed v. Industrial Accident Comm'n,* 10 Cal. 2d 191, 73 P. 2d 1212 (1937); *United States Fidelity & Guar. Co. v. Collins,* 231 Miss. 319, 95 So. 2d 456 (1957); *Brollier v. Van Alstine,* 236 Mo. App. 1233, 163 S.W.2d 109 (1942); *Weir v. New Amsterdam Cas. Co.,* 128 N.J.L. 214, 24 A. 2d 562 (1942), *aff'd,* 129 N.J.L. 102, 28 A. 2d 126 (1942); *Greenstein v. Kastonowitz,* 261 App. Div. 858, 24 N.Y.S.2d 792 (1941), all do so on the rationale that a partnership is not an entity, but an association of individuals who are severally liable for partnership debts, and that an undertaking to insure a partner as an individual survives his entry into the partnership relationship. The cases follow the rule set out in 12 W. Schneider, Workmen's Compensation § 2491, at 229 (3d ed. 1959): "The general rule is that a compensation policy insuring an individual member of a partnership covers an injury to an employee of the partners." To the same effect are 100 C.J.S. *Workmen's Compensation* § 372, at 94 (1958); 58 Am. Jur. *Workmen's Compensation* § 565, at 927 (1948).

*Reed* and *Collins,* both *supra,* involve factual patterns identical with those presented in the case at bar. *Weir* and *Greenstein,* both *supra,* are factually analogous because they concern partnerships operated by only one partner, the other being a silent partner, where compensation insurance was issued only to the active partner.

In support of the contrary view, the appellees rely upon *Toenberg v. Harvey,* 235 Minn. 61, 49 N.W.2d 578 (1951); *Crall v. Hockman,* 460 S.W.2d 668 (Mo. 1970); *Mendonca Dairy v. Mauldin,* 420 P. 2d 552 (Okla. 1966); *Kalson v. Industrial Comm'n,* 248 Wis. 393, 21 N.W.2d 644 (1946), which adopt the diametrically opposite concept that a partnership is an entity, separate and distinct from its partners, for purposes of workmen's compensation law.

It is interesting to note that *Toenberg, Crall, Mendonca Dairy* and *Kalson,* all *supra,* each dealt with factual

situations involving two separate and dissimilar business activities, comparable to the situation in *Chaney v. Home Indemnity Co.*, 14 Md. App. 660, 288 A. 2d 190 (1972) (restaurant proprietor entered carbonated beverage business, selling and installing dispensers, without notifying insurer).

We regard these cases as clearly distinguishable. For example, in *Toenberg*, the injured worker was employed in a lumbering operation owned by a man who also operated an inn in partnership with his wife. The injured worker attempted to recover under a workmen's compensation insurance policy issued to the partnership. The court's rationale was essentially that the partnership was an entity for workmen's compensation purposes in the sense that the insurance policy was issued to the partnership alone and not to an individual partner who was engaged in a separate business as a sole proprietor.

Under the facts of this case, we consider the result reached in the line of cases led by *Reed v. Industrial Accident Comm'n, supra,* 10 Cal. 2d 191, 73 P. 2d 1212 as the more appropriate here and as the more consonant with the concept of partnership set forth in the Uniform Partnership Act § 6 (1), Maryland Code (1957, 1970 Repl. Vol.) Art. 73A, § 6 (1): "A partnership is an association of one or more persons to carry on as co-owners a business for profit."

In *David v. David,* 161 Md. 532, 537-38, 157 A. 755, 757 (1932), a case involving the right of the plaintiff to sue a partnership (of which her husband was a member) for damages for negligence, our predecessors, speaking through Judge Offutt, said:

> "It cannot be denied that in some respects and for some purposes a partnership may be regarded as a legal entity, and it has been so held by this court as recently as *McLane v. State Tax Commission,* 156 Md. 133, 143 A. 656 [1928]. But it is equally well settled that it is not such an entity as is a natural person or a corporation, and that its status as an independent entity is limited and incomplete. . . . But without further elaborating the subject, it is

sufficient to say that, for the purposes of this case, the vital difference between a partnership and a legal entity complete in itself, such as a natural person or a corporation, is that each partner is severally liable for the wrongful acts and omissions of the partnership, and that he is bound to contribute to his copartners his proportionate share of any sum advanced by them to satisfy an enforceable demand against it. . . ."

*Compare Townsend v. Appel Sons, Inc.*, 164 Md. 255, 164 A. 679 (1933) (truck owned by partnership not subject to attachment to satisfy debt of individual partner) and *McLane v. State Tax Comm'n*, 156 Md. 133, 143 A. 656 (1928) (partnership is an entity for purposes of taxation of its intangible personal property).

Because A & L was simply an extension of the business which Pauza had been conducting, we find no reason to justify the notion that A & L should be regarded as a separate entity here, particularly in the light of Penn National's concession that there was no difference between the premium rate paid by Pauza and that which would be charged A & L.

> *Judgment of Court of Special Appeals reversed; case remanded to that court for remand to Circuit Court for Baltimore County with instructions to enter judgment affirming the order of the Workmen's Compensation Commission; costs on appeal and below to be paid by appellee, Pennsylvania National Mutual Casualty Company.*