Jackie Wayne SCOTT,
Respondent–Appellant,

v.

EDWARDS TRANSPORTATION CO., INC., Respondent–Employer,

and

Aetna Casualty & Surety Co., Respondent–Insurer,

and

Medwick Johnston, Appellant–Respondent.

No. 72916.

Supreme Court of Missouri, En Banc.

April 9, 1991.

Rehearing Denied May 3, 1991.

Phillip J. Barkett, Jr., Sikeston, for respondent-appellant.

Manuel Drumm, Sikeston, for Medwick Johnston.

James B. Kennedy, Paul D. Larimore, St. Louis, for Edwards Trans., and Aetna Cas. & Sur. Co.

HOLSTEIN, Judge.

Claimant Jackie W. Scott sought workers' compensation from Medwick Johnston and Edwards Transportation Company, Inc. (Edwards). The Labor and Industrial Relations Commission (Commission) affirmed the administrative law judge's award of compensation against Johnston and a denial of the claim against Edwards. Scott and Johnston appealed to the Missouri Court of Appeals, Southern District. Following opinion, this Court granted transfer. Rule 83.03; Mo. Const. art. V, § 10. Affirmed.

In a single point, Scott asserts that under the facts of this case he should be deemed a statutory employee of Edwards. Johnston's brief on appeal claims 1) he was not individually bound by an election of the "Rainbow Buildings" partnership to be subject to the Workers' Compensation Act, and 2) he did not have a sufficient number of employees to be an employer as defined in the Act.

As the issues are presented, appellate review is limited to questions of law and whether the award is supported by sufficient competent evidence in the record. Section 287.490.1.[1] In reviewing fact questions, this Court considers the evidence in the light most favorable to the findings of the Commission. *Sellers v. Trans World Airlines, Inc.*, 752 S.W.2d 413 (Mo.App. 1988).

On April 22, 1987, Scott was helping construct a partially completed steel frame building when he fell from the roof and sustained severe injuries. Scott had been employed by Medwick Johnston. The property on which the building was being constructed was owned by Edwards.

On March 19, 1987, Edwards accepted a bid of Medwick Johnston submitted on a proposal form of Rainbow Buildings. According to the proposal, Rainbow Buildings undertook to provide the labor and materials to construct a building for Edwards for

---

**1.** All references to statutes are to RSMo 1986.

a set price. Next to the printed words "authorized signature" appears the signature of Medwick Johnston. Johnston was the only person with whom Edwards negotiated the contract. To the left of Johnston's signature was a declaration that "Our workers are fully covered by Workmen's Compensation Insurance."

Sometime prior to entering into the contract, Johnston had been in business with Fred Storey, doing business as Rainbow Buildings. On October 22, 1985, certificates were filed with the Division of Workers' Compensation reflecting the purchase of workers' compensation insurance by Johnston and Storey, doing business as Rainbow Buildings. Neither Johnston nor Storey rescinded any acceptance of the Workers' Compensation Act. Johnston testified that he had ceased doing business with Storey several months prior to April 22, 1987. The insurance had expired by the date of Scott's injury.

Edwards is a trucking company in the business of hauling goods for hire. Edwards was not engaged in the business of constructing, repairing or demolishing buildings.

During the course of construction and prior to Scott's injury, Johnston had employed six or seven different persons. However, there is no evidence that Johnston had more than four employees working for him at any one time on or prior to April 22, 1987.

On this evidence, the Commission concluded that Edwards was not a statutory employer of Scott pursuant to § 287.040. Thus, Edwards was held not to be liable.

The Commission found two grounds justifying an award against Johnston. The first was that, notwithstanding the dissolution of the partnership,

Johnston, by his actions, intended to be covered by the Act. He used a bid form which stated he was covered by the Act. Johnston continued in the same type of business as that engaged in by the partnership, building steel buildings. He held himself out as "Rainbow Builders" [sic] by using the same bid forms as the partnership had used and represented he was covered under the Act.

The second basis was that Johnston employed a total of six or seven employees during the course of the construction, thus attaining the threshold number of employees to qualify as an employer under the Act.

I.

■ Scott's appeal takes issue with the Commission's application of § 287.040 to these facts. The relevant portion of the statute provides:

1. Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable ... to such contractor ... and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

Scott seizes on certain facts to assert that Edwards was acting as a general contractor on its premises, and is thus liable as a statutory employer pursuant to § 287.040.1.[2] The facts relied on are that Edwards contracted separately for electrical work, directed the "roughing in" of plumbing, did part of the finish work, had a representative regularly checking the work, supplied the financing and exchanged employees with Johnston. As Scott would have the Court construe § 287.040.1, any landowner who engages a contractor to perform part, but not all, of the work on a project is in the usual business of a general contractor. That reading of the words "usual business" is extremely broad and is not supported by the Missouri cases construing the statute.

Scott cites four cases that he claims support his argument, *Viselli v. Missouri Theatre Bldg. Corp.*, 361 Mo. 280, 234 S.W.2d

---

2. The issue here is distinguishable from that in *West v. Posten Construction Co.*, 804 S.W.2d 743 (Mo. banc 1991). In that case it was clear that the landowner's usual business was general construction contracting.

563 (1950); *Tokash v. General Baking Co.*, 349 Mo. 767, 163 S.W.2d 554 (1942); *Shaver v. First Union Realty Management, Inc.*, 713 S.W.2d 297 (Mo.App.1986); and *Ratliff v. Cargill, Inc.*, 680 S.W.2d 233 (Mo.App.1984).

In *Viselli*, the corporate owner of a commercial building contracted to have windows washed. This Court held an employee of the window washing service was a constructive employee of the corporation that owned and managed the commercial building. It was stipulated that a window cleaning service was an integral and necessary part of the maintenance and operation of the corporation's commercial building business. 234 S.W.2d at 566.

*Shaver* is factually similar to *Viselli*. There the corporation owned and managed commercial real estate. The claimant was an employee of a separate corporation that had contracted with the owner to maintain a commercial building. The claimant was a maintenance engineer and was checking on the operation of a sump pump when he was injured. Under those "essentially undisputed" facts, the claimant was held to be a statutory employee of the owner. 713 S.W.2d at 300.

In *Ratliff*, the court held that an employee of a pest control company was a deemed employee of the owner of a feed manufacturing plant. There it was admitted that decontamination of the plant was part of the feed manufacturer's usual and essential manufacturing process. 680 S.W.2d at 234.

In *Tokash*, a baking company regularly employed a painter who, at the direction of the baking company manager, hired a second painter to assist in painting the exterior of the baking company building. The second painter was injured on the job. The holding in *Tokash* was that the injured painter was under the control of the baking company and was an actual employee of the company, not merely a constructive employee by operation of the statute. 163 S.W.2d at 556.

In the first three cases relied on, it was admitted, stipulated or undisputed that the independent contractor's employee was engaging in some duty or activity that was routinely performed in the operation of the owner's usual business. None of those cases involved the construction of an entirely new building. The fourth case, *Tokash*, did not involve the application of § 287.040. The cases do not support Scott's argument.

■ There is no infallible test for determining if a particular act by a contractor's employee was part of the landowner's usual business. However, the facts must show that the work included some duty or activity routinely performed in the operation of the owner's usual business conducted on the premises. *McGuire v. Tenneco, Inc.*, 756 S.W.2d 532, 535 (Mo. banc 1988). The facts of this case do not mandate a finding that in the usual course of operating its trucking business on its premises, Edwards routinely constructed buildings. On the contrary, the Commission could and properly did conclude that construction of the building was merely incidental or ancillary to the trucking business. Under such circumstances, the decision of the Commission will not be disturbed. *Viselli*, 234 S.W.2d at 566; *Saale v. Alton Brick Co.*, 508 S.W.2d 243, 248 (Mo.App.1974); *Scott v. Morrison Truck & Tractor Co.*, 422 S.W.2d 353, 357 (Mo.App.1967); *Morehead v. Grigsby*, 234 Mo.App. 426, 132 S.W.2d 237, 241 (1939). Scott's point on appeal is without merit.

## II.

■ In Johnston's brief on appeal, he claims not to have been acting as a partner in Rainbow Buildings, but in his individual capacity when he entered into the contract with Edwards and employed Scott. Relying on *Crall v. Hockman*, 460 S.W.2d 668 (Mo. banc 1970), Johnston argues that for workers' compensation purposes, individual employees of one of the partners are not attributable to the partnership, because the partnership is treated as a separate employing entity. Thus, the election to accept the provisions of the Workers' Compensation Act by the "Rainbow Buildings" entity was not binding on him individually.

Johnston correctly points out that *Brollier v. Van Alstine,* 236 Mo.App. 1233, 163 S.W.2d 109 (1942), relied on by the Commission in its decision, has been overruled by *Crall.* The question then becomes whether *Crall* is controlling here. If the Commission's result is correct on the law and supported by substantial competent evidence, this Court must affirm.

The relevant statutes are §§ 287.030 and 287.090. The word "employer" is defined by § 287.030.1 as:

(1) Every person, partnership, association, corporation, trustee, receiver, the legal representatives of a deceased employer, and every other person … using the service of another for pay;

. . . .

(3) Any of the above defined employers must have five or more employees to be deemed an employer for the purposes of this chapter unless election is made to become subject to the provisions of this chapter as provided in subsection 2 of section 287.090. . . .

Certain employments are exempted from the workers' compensation law by § 287.090.1, including those employments where the employer has no more than four employees. However, § 287.090.2 provides:

Any employer in this section exempted under subsection 1 of this section may bring himself within the provisions of this chapter by filing with the division notice of his election to accept the provisions, or by the purchasing and accepting by the employer of a valid compensation insurance policy. . . . The election shall take effect and continue from the date of filing with the division by the employer of his election to accept liability under this chapter, or from the effective date of the insurance policy. Any employer electing to become liable under this chapter may withdraw his election by filing with the division a notice that he desires to withdraw his election, which withdrawal shall take effect thirty days after the date of the filing. . . .

In *Crall v. Hockman, supra,* this Court was confronted with facts distinguishable from those presented now. Hockman and Wallace were in a partnership business. In a transaction unrelated to the business, Crall was hired by Wallace to set tile in a home being built by Wallace and his wife. Crall was injured on the job and filed a claim against the partnership. Even though Missouri partnership law follows the aggregate rather than the entity theory, the Court construed § 287.030.1 in such a way that an individual partner is treated as a separate employing entity from the partnership for the purpose of attributing the number of employees to a particular employer. *Id.* at 670. The Court relied on *Kalson v. Industrial Comm'n,* 248 Wis. 393, 21 N.W.2d 644 (1946). As will be more fully discussed below, *Crall* has been distinguished, explained or otherwise limited more often than followed since it was decided.

No specific language in the workers' compensation law creates a legal entity, separate from its owners, known as a partnership. That entity was created by this Court through the process of judicial construction. It is altogether appropriate for this Court to circumscribe the parameters within which the separate entity concept will be recognized. The mere utterance of a rule by our predecessors does not mandate the blind application of the rule, unrestrained by reason and justice.

In this case, Medwick Johnston and Fred Storey, doing business as Rainbow Buildings, voluntarily elected to accept the provisions of the Workers' Compensation Act "by the purchasing and accepting … of a valid compensation insurance policy." § 287.090.2. Although Johnston and Storey ceased doing business together, Johnston continued to engage in the same business (construction of frame buildings), used a partnership form, entered into a contract using the partnership name, represented to the other party to the contract that "our workers"[3] were covered by workers' compensation insurance, and thereafter employed Scott to perform work under the

---

**3.** Apparently referring to Rainbow Buildings' employees.

contract. Such facts were not present in *Crall.*

The facts peculiar to this case present a different question. The issue here is whether circumstances exist justifying a finding that Johnston and the "Rainbow Buildings" partnership were a single employing entity so that the election to accept provisions of the act are binding on Johnston.

The courts and the legislature have not consistently applied the separate employing entity concept when dealing with partnerships in the context of the Workers' Compensation Act. For example, when a partner is paid a salary for performing duties for a partnership and is injured on the job, it is generally held that the individual partner is not a separate entity from the partnership and thus may not recover as an employee. Larson, *Workers' Compensation,* § 54.31 (1990); *Chambers v. Macon Wholesale Grocer Co.,* 334 Mo. 1215, 70 S.W.2d 884, 887 (1934).[4] Partners are by statute denied benefits for injuries sustained while engaged in the partnership business, absent an individual election to procure insurance coverage. § 287.035. An employee injured on the job may not maintain an action for negligence against the individual partner. Notwithstanding the holding in *Crall,* the partners and the partnership are not separate employing entities under such circumstances and the employee's exclusive remedy is under the Workers' Compensation Act. *Anderson v. Steurer,* 391 S.W.2d 839, 843 (Mo.1965); *Rhodes v. Rogers,* 675 S.W.2d 107, 109 (Mo. App.1984).

Another situation has arisen in which courts have generally refused to recognize the individual partner as a separate employing entity under the Workers' Compensation Act. The most recent example was *Waller v. Keene,* 276 Md. 605, 349 A.2d 628

(1976), a case with facts analogous to those now under consideration. The Maryland Workers' Compensation Law defined employer in nearly the same language as § 287.030.1.[5] Pauza, a carpentry contractor, obtained a policy of workers' compensation insurance as an individual employer. Thereafter, he entered into a partnership called A & L Contractors, which in turn employed Keene to work on a carpentry project for the partnership. Keene was injured. The question on appeal was whether Pauza's individual workers' compensation insurance carrier was liable on Keene's claim. The court distinguished *Crall* and *Kalson* on their facts because those cases involved two separate and dissimilar businesses. Quoting *David v. David,* 161 Md. 532, 537–38, 157 A. 755, 757 (1932), the court said:

> It cannot be denied that in some respects and for some purposes a partnership may be regarded as a legal entity and it has been so held by this court.... But it is equally well settled that it is not such an entity as is a natural person or a corporation, and that its status as an independent entity is limited and incomplete....

349 A.2d at 631. "Because A & L was simply an extension of the business which Pauza had been conducting, we find no reason to justify the notion that A & L should be regarded as a separate entity here ..." *Waller,* 349 A.2d at 631. In accord, see *U. S. Fidelity & Guaranty Co. v. Collins,* 231 Miss. 319, 95 So.2d 456 (1957); and *Reed v. Industrial Accident Comm'n,* 10 Cal.2d 191, 73 P.2d 1212 (1937).

Assuming that Rainbow Buildings is treated as an entity separate from the individual partners, a question arises as to how such entity is terminated. Although the parties do not raise the issue in their

---

**4.** The dissent asserts that *Chambers* was overruled by *Crall.* However, the *Crall* court did not say it overruled *Chambers,* and if it did so implicitly, enactment of § 287.035 rescinded the overruling.

**5.** Maryland Annotated Code Article 101, § 67(2) (1974 Cumulative Supplement) defines employer:

(2) "Employer" means those persons who fall within the requirements of ... this article including a person, partnership, association, corporation, and the legal representatives of a deceased employer, or the receiver or trustee of a person, partnership, association or corporation employing workmen.

briefs, it is suggested that pursuant to the partnership statutes, a division of assets between the partners terminates the partnership. Missouri's version of the Uniform Partnership Act, Chapter 358 RSMo, does not recognize a partnership as a legal entity separate from the individual partners. Therefore, it is illogical to rely on strict rules of the partnership act as a basis for terminating the existence of a fictional entity which the act never created. The only business enterprise known to our jurisprudence having an existence separate from its owners is the corporation.

Generally, corporations are treated as distinct entities from their stockholders and managing officers. *Adelstein v. Jefferson Bank & Trust Co.*, 377 S.W.2d 247, 251 (Mo.1964). But the corporate entity has been disregarded under the Workers' Compensation Act in some instances. A corporate officer who was found to be both chief executive officer and majority owner in actual control of corporate operations was held not to have the status of an employee under the Workers' Compensation Act. *Soars v. Soars–Lovelace, Inc.*, 346 Mo. 710, 142 S.W.2d 866, 869 (1940).[6]

An instructive case on the question presented here is found in *Humphries v. Bray*, 271 Ark. 962, 611 S.W.2d 791 (1981). In that case, Humphries employed Bray to work in his service station. Humphries was the owner and manager of two other businesses, one of which was incorporated. Only one other employee worked in the service station business, but by adding up the employees of all three of the businesses, Humphries had five employees. Humphries argued on appeal that under the decisions in *Crall* and *Kalson*, the employees of the corporation could not be counted as his individual employees. The court examined the manner in which Humphries had operated the three businesses and noted that the evidence reflected that for all practical purposes, the three businesses had been conducted as one. The court concluded that under such circumstances, it was appropriate to ignore the corporate

entity and treat all the employees as those of Humphries. 611 S.W.2d at 793. *See also Saf–T–Cab Service v. Terry*, 167 Md. 46, 172 A. 608 (1934).

If this were a case in which Johnston had treated his individual business and the partnership business as separate entities in form and practice, *Crall* might be controlling. However, Johnston continued to engage in the same business as had the partnership, entered into a contract using the partnership name and represented in the contract that employees were covered by workers' compensation insurance. Claimant was employed to carry out duties under that contract. In sum, Johnston treated his individual business as a mere extension and continuation of the partnership business. The net effect of Johnston's conduct was to merge the partnership entity with his individual business, so that the two became one. That Johnston and Rainbow Buildings had become a single entity is reiterated by the understanding of Edwards. As he put it in a concise and common sense way at the hearing, "I thought Rainbow Buildings was Mr. Johnston." The fiction that a partnership is a separate employing entity from the individual partners will not be honored for the benefit of an employer who has, by words and conduct, disregarded the separateness of the businesses in which he engages.

■ Johnston also argues that absent proof that he hired employees during the period for which the insurance was written, the fact that a policy was obtained did not constitute an election. In support of that argument he cites *Chilton v. Thum*, 631 S.W.2d 74 (Mo.App.1982). *Chilton* contains such language. However, the statute is quite clear that "purchasing and accepting" the insurance policy is all that is necessary to demonstrate an election. Nothing in the statute suggests that hiring an employee before allowing the insurance policy to expire is essential to the election, or that failure to do so constitutes a with-

---

6. The result in *Soars* is no longer the law due to legislative amendments. *See Lynn v. Lloyd A. Lynn, Inc.*, 493 S.W.2d 363, 366 (Mo.App.1973).

drawal of the election. Therefore, no evidence that an employee was hired during the term of the policy is required to establish the election. It is noteworthy that *Chilton* did not rely entirely on an erroneous reading of § 287.090.2 to achieve its result. It also relied on *Wilkerson v. Potashnick*, 226 S.W.2d 402 (Mo.App.1950), in which it was determined that an individual's election to accept the act in one business was not effective many years later with respect to a different business engaged in by the same individual. To the extent *Chilton* is inconsistent with this decision and inconsistent with the plain language of § 287.090, it is overruled.

Because the first issue raised in Johnston's brief is dispositive of his appeal, the Court need not address the second question, in which he takes issue with the determination that he had more than four employees. The award of the Commission is affirmed.

BLACKMAR, C.J., RENDLEN and HIGGINS, JJ., and WASSERSTROM, Senior Judge, concur.

ROBERTSON, J., concurs in part and dissents in part in separate opinion filed.

COVINGTON, J., concurs in part and dissents in part and concurs in concurring in part and dissenting in part opinion of ROBERTSON, J.

BILLINGS, J., not sitting.

ROBERTSON, Judge, concurring in part and dissenting in part.

I concur in Part I of the majority opinion. However, I believe that Section 287.030.1, RSMo 1986, and *Crall v. Hickman*, 460 S.W.2d 668 (Mo. banc 1970), require a reversal of the award of the Labor and Industrial Relations Commission as to appellant Medwick Johnston and a remand for reconsideration in light of *Crall*. I, therefore, respectfully dissent from Part II of the majority opinion.

*Crall* decided that "a partnership is a separate employing entity under sec. 287.-030." *Id.* at 672. *Crall* reaches this conclusion fully aware of and contrary to general partnership law in Missouri which follows the aggregate, rather than entity, theory of partnership. *Ward v. State Farm Mut. Tornado Ins. Co. of Mo.*, 441 S.W.2d 1, 4 (Mo.1969).

Because the Workers' Compensation Act ("the Act") is substitutional for the common law, *Wengler v. Druggists Mutual Insurance Co.*, 583 S.W.2d 162 (Mo. banc 1979), its remedies and its definitions are exclusive of common law remedies and definitions; courts are without the authority to alter the provisions of the Act, no matter how appropriate the court's generous and humanitarian, but contrary-to-law, motivation. *Crall* correctly reasons, therefore, that the General Assembly possesses the authority to designate a partnership as a separate entity for purposes of the workers' compensation law and exercised that authority by its adoption of Section 287.-030. The majority is incorrect, therefore, in concluding that factual distinctions between this case and *Crall* render the underlying legal principle established in Section 287.030—that a partnership for purposes of the Act is a separate entity from its partners—inapposite.

In my opinion, if the Workers' Compensation Act mandates that the partnership must be treated as a separate entity—and it does—that mandate must be applied consistently across the Act. Consistency in the law is not the hobgoblin of small minds. Instead, consistency in legal interpretation provides the predictability and stability by which persons can choose their conduct with some assurance of its propriety and safety. The demand of consistency is particularly acute where a court is interpreting statutes adopted by elected representatives and subject to amendment should those representatives disagree with a judicial interpretation.

The majority, however, points to courts that "have not consistently applied the separate employing entity concept when dealing with partnerships in the context of the Workers' Compensation Act." At 79. The cases upon which the majority relies, however, do not lend support to a doctrine of inconsistency. On careful examination, each of the cases to which the Court looks

for succor are consistent with the extant law in the state vis-a-vis entities and a Workers' Compensation Act.

*Chambers v. Macon Wholesale Grocer Co.*, 334 Mo. 1215, 70 S.W.2d 884, 887 (1934), was decided thirty-five years before *Crall* and relied on the aggregate theory of partnership under the Act expressly rejected in *Crall.* Indeed, *Chambers'* author, then–Commissioner Hyde, turned from the aggregate theory of partnership upon which *Chambers* is constructed, in dissent in *Blew v. Conner*, 328 S.W.2d 626, 631–33 (Mo. banc 1959) (Eager, J. dissenting, joined by Hyde, J.). After *Crall*, *Chambers* is an incorrect statement of the law. It is of no assistance to the Court.

*Waller v. Keene*, 276 Md. 605, 349 A.2d 628 (1976), to which the Court next turns, was decided on the basis of Maryland's rule that a partnership is to be treated under the aggregate, not entity theory, for purposes of Maryland's workers' compensation law. Obviously, *Waller* is consistent with the Maryland law, but inconsistent with Section 287.030.

The Court next considers *Soars v. Soars–Lovelace, Inc.*, 346 Mo. 710, 142 S.W.2d 866, 869 (1940). Under the then-extant Workers' Compensation Act in Missouri, an employee was statutorily defined as "every person in the service of any employer ... under any contract of hire, ... but shall not include persons whose annual average earnings exceed three thousand six hundred dollars." Section 3305(a), RSMo 1929. Because claimant Soars earned more than $3,600 annually, the Court found him statutorily excluded from coverage. As an additional, though unnecessary, basis for its holding, the Court found that claimant Soars served in a dual capacity within his corporation—executive officer and employee. Ignoring totally the statutory definition of "employer" and focusing solely on the definition of "employee," the Court held that the legislature did not intend to permit claimant Soars, who owned more than 75 percent of the corporate stock and served as chief executive officer, to come under the coverage of the Act. The Court cited a line of Missouri cases holding that a controlling corporate shareholder/officer could not be an employee since the corporation as an entity could not "control" such an "employee."

*Soars*, or so it seems to me, is an indefensible product of this Court's willingness to manufacture artificial legal distinctions in contravention of statutory language. Even at the time of *Soars*, the statutory definition of employer contained in Section 3304(a), RSMo 1929, would have required the Court to treat the corporation as an entity. Indeed the fiction of corporate personage is among the vital purposes for which that business organization is often chosen. *Soars* failed the tests of common sense and legal consistency. As the Court of Appeals noted in *Lynn v. Lloyd A. Lynn, Inc.*, 493 S.W.2d 363, 364 (Mo.App. 1973), the *Soars* dual capacity test created the anomaly of extending coverage under the Act to some corporate officers and refusing coverage to others.

Subsequently, the legislature rejected *Soars*, as the majority acknowledges, adopting statutory language expressly including corporate officers within the coverage of the Act. That legislative correction reached for both the common sense and legal consistency lacking in *Soars* and attempted to ensure that courts would treat entities as entities for purposes of construing coverage under the Act.

The majority also finds *Humphries v. Bray*, 271 Ark. 962, 611 S.W.2d 791 (Ark. App.1981), instructive, again to show that courts have not always treated entities, particularly corporations, as entities for purposes of workers' compensation acts. Even refusing to consider the legislative correction of *Soars* for Missouri, *Bray* is of little help to the majority. There the Arkansas court found that the corporate entity should be disregarded for purposes of Arkansas' workers' compensation law. The court found that the sole shareholder operated the corporation not as a corporation but as a sole proprietorship, as his alter ego. "If we were faced with a corporation that complied with the principles of corporate law both as to form and practice,

we would hold [that the corporation] ... was not the same employer as appellant.... However, under the set of facts in this case, [the corporation] ... may be considered in determining the number of employees of the appellant." Id. 611 S.W.2d at 793.

*Bray* stands for the proposition that a court can pierce the veil of a corporation under a workers' compensation act in the same manner it can pierce that veil outside the act. The reliance of an employer on an entity for any purpose depends on its legal existence. Yet I fail to see that *Bray*, founded on a doctrine allowing a court to disregard an employer's claim that his corporation protects him from liability under a workers' compensation law, applies where, as here, the employer claims that the entity does not exist. *Bray* teaches that a court can disregard the shield of a "sham" entity behind which an employer would hide.

This case is different. In this case, the employer seeks no shelter behind a sham entity, yet the Court insists that the partnership and its election under Section 287.-090 continue beyond the death of the entity, sentencing Medwick Johnston to a Promethean punishment for his temerity in continuing as a building contractor as a sole proprietorship.

There is simply no basis in law for this Court to apply the entity theory of partnership for some purposes under the Act and the aggregate theory for others. Even though the legislature has not passed legislation changing *Crall*'s reading of Section 287.030, if the Court wishes to overrule *Crall*, it should say so.

The relevant inquiry, it seems to me, is whether the entity that made the election under Section 287.090 exists for purposes of attribution to Medwick Johnston. Just as corporate law determines whether the corporation exists for purposes of disregarding it as an entity under *Bray*, general partnership law controls to determine whether the partnership as an entity (for purpose of the Workers' Compensation Act) exists.

Where there is no violation of a partnership agreement, a partnership is dissolved "[b]y the express will of all partners who have not assigned their interests or suffered them to be charged for their separate debts." Section 358.310(1)(c), RSMo 1986. Dissolution does not terminate the partnership until the partnership affairs are wound up. Section 358.300, RSMo 1986. A partnership is "wound up" and its existence terminates when the partnership assets are liquidated and distributed to the partners.

The facts of this case show that Rainbow Builders, as a partnership, did not exist at the time Johnston entered his agreement with Keith Edwards. Johnston testified, without contravention, that his partnership with Fred Storey terminated by mutual agreement in August, 1986, and that he and Storey had closed the bank account and divided the partnership's tools prior to Johnston contracting with Edwards. The record also shows, again consistent with Johnston's testimony, that Rainbow Builders cancelled its workers' compensation insurance in August, 1986, effective September 1, 1986, even though the policy purchased by Rainbow Builders did not expire until October 22, 1986. The exhibits in the record further show that Johnston paid the claimant, Jackie Scott, with checks bearing the imprint "Johnston Building—Remodeling, Medwick or Evelyn Johnston."

The only evidence in this case supporting the majority's conclusion that Johnston "disregarded the separateness of the businesses in which he engages" is the so-called contract between Keith Edwards and Medwick Johnston on a printed form bearing the name "Rainbow Builders" entitled "Proposal and Acceptance". Yet that evidence is suspect. First, the form has been substantially altered. (See attachment "A"). Most of the address is deleted and it appears that a telephone number is also removed, leaving "Rainbow Buildings" and Medwick Johnston's telephone number. Second, Edwards did not rely on any representations concerning the existence of a partnership. He testified that he had no knowledge of any partnership, nor had he heard of Fred Storey. "I thought Rainbow

Buildings was Mr. Johnston," Edwards stated at the hearing.

Under these unchallenged facts, it is difficult to agree with the majority. If the partnership ceased to exist as an entity prior to Johnston's contract with Edwards, it is not possible to conclude that Johnston commingled a single business. One cannot commingle a single thing. Yet this is the basis of the Court's holding.

Moreover, if, as *Crall* says, " '[a]ll liability under the Compensation Act arises by virtue of a specific contract relationship between an employer and an employee,' " id. at 671, quoting with approval the dissenting opinion of Judge Eager in *Blew*, 328 S.W.2d at 632, there is simply no evidence that the claimant, Jackie Scott, had any contractual relationship with the partnership entity which made the election to accept the Workers' Compensation Act. He could not; the partnership did not exist.

In my view, the election made by Rainbow Buildings under Section 287.090 terminated with the demise of the Rainbow Buildings partnership entity. Once the partnership ceased to exist as an entity, so did its election. The mere fact that Johnston used an obviously altered partnership form for, as he testified, the sake of convenience in submitting his bid to Edwards, is not sufficient to revive the election of a dead partnership. No one in this transaction thought the partnership was either involved or alive.

A final point on the legal issues must be made. The Labor and Industrial Relations Commission's decision merely affirms, without legal reasoning or factual finding, the decision of the administrative law judge. That judge based his award on *Brollier v. Van Alstine*, 236 Mo.App. 1233, 163 S.W.2d 109 (1942), a case expressly overruled by *Crall*. At a minimum, the Court should remand this case for fact finding under current law.

Given the majority's position there is no need to consider further Johnston's points on review. It is sufficient for purposes of this separate opinion to say that I would also find that Johnston was not a major employer within the meaning of Section 287.030.

Last year, the General Assembly amended Section 287.030.1(3), RSMo Cum Supp. 1990, adding to that subsection language bringing "construction employers" within the mandatory coverage of the Workers' Compensation Act "if they have one or more employees." Thus, issues concerning the obligation of Medwick Johnston, a construction employer, to provide workers' compensation coverage to Jackie Scott raised in this case will not recur.

The view I take would result in reversing the Commission's decision as to Johnston. However, because the administrative proceedings in this case relied improperly on Brollier, I would remand for reconsideration in light of Crall. I, therefore, respectfully dissent from Part II of the majority opinion.

# APPENDIX

RAINBOW BUILDINGS
P.O. Box
MISSOURI 53867
• (314) 649-5506

**PROPOSAL AND ACCEPTANCE**

ATTACHMENT "A"

| PROPOSAL SUBMITTED TO | PHONE | DATE |
|---|---|---|
| Edwards Trucking | | 3-19-87 |

| STREET | JOB NAME |
|---|---|
| | Edwards Trans. |

| CITY, STATE AND ZIP CODE | JOB LOCATION |
|---|---|
| East Prairie Mo. | Morgan Park |

| ARCHITECT | DATE OF PLANS | JOB PHONE |
|---|---|---|
| | 3-19-87 | 6495 3595 |

We hereby submit specifications and estimates for

One 40' X 80' Post Frame.
Metal Bld, Bld. to Have 6" Reinforced concrete
Floor. Side girts and Roof purlins to be 2x6 Lumber
Standard or Better.
2- 1½ X14 Over head doors with hoist
2- 3°x6⁸ Walk in doors
½" Tuf-R insulation Walls and Roof

One 16' X 20 Side Bld. For Office
2x4 Stud Walls metal Siding
4" Reinforced concrete
1- 3'0"X6'8" walk in door 2-3'X3' Alum, windows
½" Tuf-R insulation

Add $224.00 for ~~~ 14X14 doors

**We Propose** hereby to furnish material and labor — complete in accordance with above specifications, for the sum of:

Twenty Thousand Five Hundred Fifty One ~~~ dollars ($ 20551. ⁰⁰ ).
Payment to be made as follows.
⅓ upon acceptance - ⅓ after concrete and
Post are set ⅓ upon Completion

All material is guaranteed to be as specified. All work to be completed in a workman-like manner according to standard practices. Any alteration or deviation from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accidents or delays beyond our control. Owner to carry fire, tornado and other necessary insurance. Our workers are fully covered by Workmen's Compensation Insurance.

Authorized Signature _Medarik Johnston_

Note: This proposal may be withdrawn by us if not accepted within __30__ days.

**Acceptance of Proposal** The above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined above.

Date of Acceptance __3-19-87__

Signature _Keith Edwards_
_Medarik Johnston_

PACC 893-3

Claimant's Ex. A

7/21/87

MICROFILMED